# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| Phoenix Licensing, L.L.C., an Arizona limited liability company, and LPL Licensing, L.L.C., a Delaware limited liability company;<br><br>        Plaintiffs,<br><br>vs.<br><br>Aetna Inc., a Pennsylvania corporation; Aetna Life Insurance Company, a Connecticut corporation; Commerce Bancshares, Inc., a Delaware corporation; Commerce Bank, N.A., a national banking association; Cullen/Frost Bankers Inc., a Texas corporation; Frost National Bank, a national banking association; HSBC Finance Corporation, a Delaware corporation; HSBC Bank USA, N.A., a national banking association; HSBC Bank Nevada, N.A., a national banking association; HSBC Card Services, Inc., a Delaware corporation; HSBC Technology & Services, Inc.; a Delaware corporation; HSBC Credit Center, Inc., a Delaware corporation; Liberty Mutual Insurance Company, a Massachusetts corporation; MetLife, Inc., a Delaware corporation; Metropolitan Life Insurance Company, a New York corporation; MetLife Bank N.A., a national banking association; Metropolitan Property and Casualty Insurance Company, a Rhode Island corporation; Mutual of Omaha Insurance Company, a Nebraska corporation; United of Omaha Life Insurance Company, a Nebraska corporation; United World Life Insurance Company, a Nebraska corporation; Sovereign Bank, a federally chartered savings bank, UnitedHealth Group, Inc., a Minnesota corporation; United HealthCare Insurance Company, a Connecticut corporation; Golden Rule Insurance Company, an Illinois corporation; United Healthcare Services, Inc., a Minnesota corporation; and PacifiCare Health Systems LLC, a Delaware corporation;<br><br>        Defendants. | CASE NO. 2:11-cv-00285-TJW<br><br>**JURY TRIAL REQUESTED**<br><br>**DEFENDANT LIBERTY MUTUAL INSURANCE COMPANY'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED** |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. LEGAL STANDARDS ....................................................................................................... 3

    A. The Standard For Review ........................................................................................ 3

    B. Patentable Subject Matter Under Section 101 ......................................................... 3

    C. The Machine-Or-Transformation Test ..................................................................... 4

    D. Section 101 Issues Are Appropriate For A 12(b)(6) Motion To Dismiss ................ 6

III. **PLAINTIFFS' COMPLAINT AND THE '938 AND '366 PATENTS** .......................... 7

IV. ARGUMENT ...................................................................................................................... 9

    A. The '938 And '366 Patents Fail The Machine-Or-Transformation Test ................. 9

        1. The Claims Of The '938 And '336 Patents Are Not Tied To A Particular Machine ........................................................................................ 9

        2. The Claims Of The '938 And '366 Patents Do Not Transform An Article .......................................................................................................... 12

    B. The '938 And '366 Patents Claim An Abstract Idea ............................................. 13

V. CONCLUSION ................................................................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Accenture Global Servs. GmbH v. Guidewire Software Inc.*,
  691 F. Supp. 2d 577 (D. Del. 2010) ............................................................................................12

*Ass'n For Molecular Pathology v. U.S. Patent & Trademark Office*,
  __ F.3d __, 2011 WL 3211513 (Fed. Cir. July 29, 2011) .....................................................2, 6

*Bancorp Servs. Inc. v. Sun Life Assurance Co. of Canada*,
  771 F. Supp. 2d 1054 (E.D. Mo. 2011) ...........................................................6, 11, 13, 14

*Bilski v. Kappos*,
  130 S. Ct. 3218 (2010) ....................................................................................................3, 4, 13

*CLS Bank Int'l v. Alice Corp. Pty. Ltd.*,
  768 F. Supp. 2d 221 (D.D.C. 2011) ..........................................................................................10, 11

*Cybersource Corp. v. Retail Decisions, Inc.*,
  620 F. Supp. 2d 1068 (N.D. Cal. 2009) ...........................................................................2, 7, 12

*DealerTrack, Inc. v. Huber*,
  657 F. Supp. 2d 1152 (C.D. Cal. 2009) .................................................................................10

*Diamond v. Diehr*,
  450 U.S. 175 (1981) ............................................................................................................3, 4

*Every Penny Counts, Inc. v. Bank of Am. Corp.*,
  No. 2:07-cv-042, 2009 WL 6853402 (M.D. Fla. May 27, 2009) ............................................11

*Ex parte Enenkel*,
  No. APL 2008-2239, 2009 WL 924475 (B.P.A.I. Apr. 6, 2009) ............................................10

*FuzzySharp Techs. Inc. v. 3D Labs. Inc.*,
  No. C-07-5948, 2009 WL 4899215 (N.D. Cal. Dec. 11, 2009).........................................7, 10

*Glory Licensing LLC v. Toys "R" US, Inc.*,
  No. 09-4252, 2011 WL 1870591 (D.N.J. May 16, 2011) ................................................2, 4, 6

*Gottschalk v. Benson*,
  409 U.S. 63 (1972) ....................................................................................................3, 4, 5, 10

*Graff/Ross Holdings LLP v. Federal Home Loan Mortgage Corp.*,
  No. 07-796, 2010 WL 6274263 (D.D.C., Aug. 27, 2010) ........................................2, 6, 10, 14

*In re Bilski*,
  545 F.3d 943 (Fed. Cir. 2008), *aff'd*, 130 S. Ct. 3218 (2010) ......................................... *passim*

Page

*In re Ferguson*,
   558 F.3d 1359 (Fed. Cir. 2009)..................................................................................................5

*Jebaco Inc. v. Harrah's Operating Co.*,
   587 F.3d 314 (5th Cir. 2009) .....................................................................................................3

*King Pharms., Inc. v. Eon Labs*,
   616 F.3d 1267 (Fed. Cir. 2010)..................................................................................................4

*Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*,
   594 F.3d 383 (5th Cir. 2010) .....................................................................................................3

*Parker v. Flook*,
   437 U.S. 584 (1978)......................................................................................................3, 4, 5, 14

*Perfect Web Techs., Inc., v. InfoUSA, Inc.*,
   No. 07-80286, 2008 WL 6153736 (S.D. Fla. Oct. 24, 2008), *aff'd* 587 F.3d 1324
   (Fed. Cir. 2009)........................................................................................................................13

*Plotkin v. IP Axess Inc.*,
   407 F.3d 690 (5th Cir. 2005) .....................................................................................................3

*Prometheus Labs., Inc. v. Mayo Collaborative Servs.*,
   628 F.3d 1347 (Fed. Cir. 2010)..................................................................................................4

*Ultramerical, LLC v. Hulu LLC*,
   No. 09-06918, 2010 WL 3360098 (C.D. Cal. Aug. 13, 2010) ....................................... *passim*

**STATUTES**

35 U.S.C. § 101................................................................................................................................3

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant Liberty Mutual Insurance Company ("Liberty Mutual") respectfully submits this Motion To Dismiss For Failure To State A Claim Upon Which Relief May Be Granted (the "Motion"). This Motion should be granted because the patents-in-suit do not claim patent eligible subject matter and are therefore invalid under 35 U.S.C. § 101. Because the claims of the patents-in-suit are invalid under § 101 regardless of any reasonable claim construction, this Motion is ripe for decision at this time.

## I.    INTRODUCTION

Not all clever ideas qualify for a patent. Congress and the Supreme Court have decreed that only certain types of ideas are patentable subject matter under 35 U.S.C. § 101. To this end, it is well established that patent protection does not extend to abstract ideas. Indeed, in a recent attempt to clarify the scope of patent protection under § 101, the Federal Circuit and the Supreme Court, in a case referred to as "*Bilski*," reinforced this long-standing exclusion of abstract ideas from the scope of patentable subject matter. The *Bilski* decisions also confirmed the continued applicability of the "machine-or-transformation" test as a guide in determining patent eligible subject matter.

Here, like the "risk hedging" patent at issue in *Bilski*, the asserted patents' various permutations of "automatically preparing" customized communications and replies fall far short of the *Bilski* test. Specifically, one of the two patents-in-suit, U.S. Patent No. 6,999,938 ("the '938 Patent") includes steps such as "selecting" information, "preparing" a communication, "delivering" a communication and "receiving" a communication. Similarly, the other patent-in-suit, U.S. Patent No. 7,890,366 ("the '366 Patent"), includes steps such as "providing" communication content, "preparing" a communication, and "generating" successive communications. These steps are not tied to any particular machine or apparatus, nor do they transform a particular article into a different state or thing. The fact that the '938 Patent claims a

"means" of performing these steps, and that the '366 Patent cites a "computing system" for performing the claimed processes does not resuscitate these patents. Rather, the '938 and '366 Patents are directed to the abstract idea of improving marketing and advertising campaigns by providing customized communications or replies, and, as such, do not claim patent eligible subject matter. *See Ass'n For Molecular Pathology v. U.S. Patent & Trademark Office*, __ F.3d __, 2011 WL 3211513, at *22 (Fed. Cir. July 29, 2011) (finding claims directed to "comparing" and "analyzing" information failed to satisfy the machine-or-transformation test).

In light of the massive cost of patent lawsuits, the holders of patents directed to patent ineligible abstract ideas can gain a significant, undeserved competitive advantage, or attempt to extract a large settlement, by filing suit and letting the case drag through months of discovery, claim construction, and dispositive motions. There is no need for months of protracted proceedings in this case. The patents should be declared invalid under § 101 at this stage, and the case should be dismissed. *See Glory Licensing LLC v. Toys "R" US, Inc.*, No. 09-4252, 2011 WL 1870591, at *1, *3-4 (D.N.J. May 16, 2011); *Ultramerical, LLC v. Hulu LLC*, No. 09-06918, 2010 WL 3360098, at *6 (C.D. Cal. Aug. 13, 2010); *see also Graff/Ross Holdings LLP v. Federal Home Loan Mortgage Corp.*, No. 07-796, 2010 WL 6274263, at *2, *8 (D.D.C., Aug. 27, 2010) (Mag. Kay) (treating motion to dismiss as a motion for summary judgment and recommending grant of the motion because the "asserted claims attempt to patent an abstract idea under Section 101"); *Cybersource Corp. v. Retail Decisions, Inc.*, 620 F. Supp. 2d 1068, 1080 (N.D. Cal. 2009). It is clear that both the '938 and '366 Patents are directed to unpatentable abstract ideas. No reasonable construction of the claim terms will bring the patent claims within the scope of § 101. Thus, Plaintiffs' claims should be dismissed for failing to claim patent eligible subject matter.

## II.   LEGAL STANDARDS

### A.   The Standard For Review

Dismissal is appropriate under Rule 12(b)(6) when the plaintiff fails to state a claim upon which relief may be granted.  "The ultimate question in a Rule 12(b)(6) motion is whether the complaint states a valid claim when all well-pleaded facts are assumed true and are viewed in the light most favorable to the plaintiff."  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).  Nevertheless, the court "do[es] not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions."  *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).  "[T]he complaint must allege 'more than labels and conclusions,' 'a formulaic recitation of the elements of a cause of action will not do,' and 'factual allegations must be enough to raise a right to relief above the speculative level.'"  *Jebaco Inc. v. Harrah's Operating Co.*, 587 F.3d 314, 318 (5th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

### B.   Patentable Subject Matter Under Section 101

That a patent be directed to patentable subject matter is a "threshold" requirement for patentability.  *Bilski v. Kappos*, 130 S. Ct. 3218, 3225 (2010).  Section 101 of the Patent Act states that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title."  35 U.S.C. § 101.  As computers advanced, technologies developed that did not fit neatly into the categories of "process, machine, manufacture, or composition of matter."  Numerous Supreme Court cases wrestled with the issue of when, to what extent, and in what context software and algorithms might be patentable.  *See, e.g.*, *Gottschalk v. Benson*, 409 U.S. 63, 72 (1972); *Parker v. Flook*, 437 U.S. 584 (1978); *Diamond v. Diehr,* 450 U.S. 175 (1981).  These cases found that laws of nature, physical

phenomena and abstract ideas, collectively referred to as "fundamental principles," are not patentable. *See Benson*, 409 U.S. at 67 ("Phenomena of nature, though just discovered, mental processes, and abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work."); *Flook*, 437 U.S. at 586 (claims directed to calculation of an "alarm limit" were not patentable); *cf. Diehr*, 450 U.S. at 181 (finding patentable claims directed to a process of transforming raw rubber into molded, cured rubber).

### C. The Machine-Or-Transformation Test

One way of determining whether a patent is directed to an abstract idea is through application of the machine-or-transformation test. While not the sole test for patentability, the Supreme Court, in *Bilski*, noted that the test remains a "useful and important clue" to determining patentability under Section 101. 130 S. Ct. at 3227; *see also Prometheus Labs., Inc. v. Mayo Collaborative Servs.*, 628 F.3d 1347, 1355 (Fed. Cir. 2010) (applying the machine-or-transformation test); *King Pharms., Inc. v. Eon Labs*, 616 F.3d 1267, 1278 (Fed. Cir. 2010) ("We therefore understand the Supreme Court to have rejected the exclusive nature of our [machine-or-transformation] test, but not necessarily the wisdom behind it."); *Glory Licensing LLC*, 2011 WL 1870591, at *1, *3-4 n.9 (claims directed to methods and systems for "processing information from a template file to an application program" failed the machine-or-transformation test and were also directed to an abstract idea, *e.g.*, "the basic idea that information can be extracted from a document and adapted to fill an application format").

A claim satisfies the machine-or-transformation test where "(1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing." *In re Bilski*, 545 F.3d 943, 954 (Fed. Cir. 2008), *aff'd*, 130 S. Ct. 3218 (2010). The test requires more than the mere recitation of a machine or a transformation in the language of the claim. Rather, the machine or transformation "must impose meaningful limits on the claim's scope." *Id*. at 961.

Indeed, insignificant extra-solution activity involving a machine or resulting in a transformation will not render an unpatentable principle a patentable process. *See id*. "Field of use" limitations are similarly insufficient. *Id*. at 957 ("Pre-emption of all uses of a fundamental principle in all fields and pre-emption of all uses of the principle in only one field both indicate that the claim is not limited to a particular application of the principle."); *see, e.g., Flook*, 437 U.S. at 586 (claims directed to calculation of an "alarm limit" for signaling dangers in operating a catalytic converter unpatentable though they did not "cover every conceivable application of the formula").

A "machine" is a "concrete thing, consisting of parts, or of certain devices and combinations of devices." *In re Ferguson*, 558 F.3d 1359, 1364 (Fed. Cir. 2009) (citations and quotations omitted). In order to satisfy the machine prong of the machine-or-transformation test, the method or process must be "tied to a *particular* machine" or to "a *specific* machine or apparatus" in a way that limits the claims in a meaningful way. *In re Bilski*, 545 F.3d at 961-62 (emphasis added). The fact that a claimed invention can only be carried out using some sort of non-specific machine is, alone, insufficient to satisfy the machine prong. *See Ultramercial*, 2010 WL 3360098, at *5 (holding that the fact "[t]hat the disclosed invention is only used on computers or computer networks cannot alone satisfy the machine test without rendering the test completely toothless . . . the machine must limit the invention in a meaningful way").

Where a process is not tied to a particular machine, it may be patentable nevertheless if it transforms an article into a different state or thing. *Benson*, 409 U.S. at 70. However, the transformation must be central to the claimed process. *In re Bilski*, 545 F.3d at 962. A transformation that is "merely incidental" to the claimed process or which constitutes extra-solution activity does not constitute a meaningful limitation to the claims and will not satisfy the transformation prong. *See Ultramercial*, 2010 WL 3360098, at *5. Furthermore, "[p]urported

-5-

transformations or manipulations simply of public or private legal obligations or relationships, business risks, or *other such abstractions* cannot meet the test because they are not physical objects or substances, and they are not representative of physical objects or substances." *In re Bilski*, 545 F.3d at 963-64 (emphasis added) (holding that claims directed to a process of hedging involving exchanging options, "which are simply legal rights," did not involve a patentable transformation because no physical object or substance was transformed); *see also Ass'n For Molecular Pathology*, 2011 WL 3211513, at *22 (finding claims directed to "comparing" and "analyzing" information failed to satisfy the machine-or-transformation test).

### D. Section 101 Issues Are Appropriate For A 12(b)(6) Motion To Dismiss

District courts can and have invalidated patents on a motion to dismiss under *Bilski*. *See Glory Licensing*, 2011 WL 1870591, at *4 (granting motion to dismiss where asserted patents were "addressed to abstract ideas" and thus "invalid pursuant to 35 U.S.C. § 101 and the line of cases culminating in *Bilski*"); *Ultramerical*, 2010 WL 3360098, at *7 (granting defendant's motion to dismiss on *Bilski* grounds upon finding that the patent-in-suit did not cover patentable subject matter); *see also Graff/Ross Holdings*, 2010 WL 6274263, at *2, *8 (treating motion to dismiss as a motion for summary judgment and recommending grant of the motion because the "asserted claims attempt to patent an abstract idea under Section 101"). In *Ultramerical*, the district court "reject[ed] Plaintiff's argument that this Motion should not be decided before claim construction" because Plaintiffs could not point to any construction that could save the patent from invalidity under §101. *Ultramerical*, 2010 WL 3360098, at *6; *see also Graff/Ross Holdings LLP*, 2010 WL 6274263, at *2 (finding it "unnecessary to construe the terms before deciding the issue of validity" under § 101).[1] Such a decision is proper where, as here, the

---

[1] *See also Bancorp Servs. Inc. v. Sun Life Assurance Co. of Canada*, 771 F. Supp. 2d 1054, 1059 (E.D. Mo. 2011) (noting that in deciding the motion for summary judgment, "[t]he Court has decided to address Sun Life's § 101

-6-

invalidity of the claims turns on *Bilski* and patent validity cannot be salvaged by claim construction.

### III.    PLAINTIFFS' COMPLAINT AND THE '938 AND '366 PATENTS

Plaintiffs Phoenix Licensing L.L.C.'s and LPL Licensing L.L.C.'s (collectively "Plaintiffs") Complaint asserts that Liberty Mutual infringes unspecified claims of the '938 and '366 Patents, which are attached as Exhibits B and C to the Complaint. (D.I. 1 at ¶¶ 43, 49). The '938 Patent is entitled "Automated Reply Generation Direct Marketing System." The "Background Of The Invention" section of the '938 Patent explains that "[t]he importance of widely-distributed written or printed client communications such as advertising, solicitations, etc. is well known in the marketing and advertising field. . . . Traditionally, client communications of this type have been mass-distributed using techniques such as direct mail." ('938 Patent at 1:27-38)[2]. The '938 Patent presents methods and systems for "automatically preparing customized" communications to clients in a cost effective and personalized manner rather than through traditional means of mass distribution. ('938 Patent at 34:63 – 62:64).

The fourteen independent claims of the '938 Patent include method and system claims. The elements of the method claims generally break down into 3 categories:

1) obtaining a communication from a consumer, or selecting a consumer or group of consumers;

2) "automatically generating" one or more customized "communications" or "replies"; and

3) delivering the customized communications or replies to the consumer.

---

arguments before proceeding with claims construction.  There is no requirement that claims construction be completed before examining patentability"); *FuzzySharp Techs. Inc. v. 3D Labs. Inc.*, No. C-07-5948, 2009 WL 4899215, at *2, n.1 (N.D. Cal. Dec. 11, 2009) (declining to complete claim construction before ruling on section 101 validity summary judgment motion); *Cybersource Corp.*, 620 F. Supp. 2d at 1073 ("[R]uling on defendant's section 101 motion does not require that the claims actually be construed.").

[2] Citations to the '938 and '366 Patents are by column number (at the top of each page of the written portion of the patent) and line number (down the middle of the patent).  For example, the "'938 Patent at 1:27-38" means column 1 from lines 27 to 38 and "'938 Patent at 34:63 – 62:64" means column 34 line 63 through column 62 line 64.

Similarly, the system claims require "means" for performing each category of activity including: "means" for receiving and analyzing information, "means" for automatically generating communications or replies, and "means" for communicating the communications or replies. ('938 Patent at 43:25-47, 57:10-30, 60:60 – 62:64). No specific machine or apparatus for performing each step of the method is provided in the system claims or in the patent specification.

The '366 Patent is entitled "Personalized Communication Documents, System And Method For Preparing Same." The '366 Patent presents methods and systems for preparing and generating "personalized" or "customized" communication documents for consumer entities. (*See* '366 Patent at 29:10 – 38:63). Like the '938 Patent, the six independent claims of the '366 Patent include methods and systems. The elements of the method claims generally break down into 3 categories:

1) providing content or data for a personalized communication document;
2) "automatically preparing" a personalized communication;
3) automatically generating successive personalized communications.

Similarly, the system claims recite "a computing system," "databases," and "software routines" for preparing and generating the customized communications. ('366 Patent at 35:63 – 38:63).

The dependent claims of the '938 Patent generally recite further limitations regarding the steps of collecting and delivering communications and information. (*See, e.g.*, '938 Patent at 39:57-60, 40:1-4). Like the independent claims of the '938 Patent, the dependent claims do not recite any specific machine required to perform the claimed methods or systems and expressly make clear that steps of the claimed method may be performed manually. (*Id*.). The dependent claims of the '366 Patent generally recite further limitations regarding the content, formatting

and delivery of the personalized communications. (*See, e.g.*, '366 Patent at 30:22-23, 36:47-49). Like the independent claims, they recite no specific machine or apparatus. (*Id.*).

## IV. ARGUMENT

When analyzed using the "machine-or-transformation" test coupled with the abstract idea inquiry, it is clear that the claims of the '938 and '366 Patents do not contain patent eligible subject matter. In addition to the detailed discussion below, Appendix A provides representative claim examples from the '938 and '366 Patents demonstrating the abstract nature of the asserted patents. Therefore, Plaintiffs' claims should be dismissed as the patents-in-suit are invalid under 35 U.S.C. § 101 and judgment should be entered in favor of Liberty Mutual.

### A. The '938 And '366 Patents Fail The Machine-Or-Transformation Test

#### 1. The Claims Of The '938 And '336 Patents Are Not Tied To A Particular Machine

The claims of the '938 Patent do not recite *any* "particular" or "specialized" machine or apparatus that is required to perform *any* of the claimed steps. And in fact, the dependent claims make clear that steps such as "receiving" information and "delivering" communications or replies may be performed, for example, by "non-electronic means," "via consumer interaction with a salesperson," via "direct mail," or via "telephone." (*See, e.g.*, '938 Patent at 36:50-54, 37:33-44, 39:5-8). That the dependent claims can be satisfied by a salesperson – clearly not a machine – establishes that a "particular" or "specialized" machine is not contemplated by the claims for performance of the claimed method.

At most, these method claims suggest that some general purpose computer may be used to "automatically prepar[e]" the customized communications though no specific machine is recited in the claims. Such a suggestion to use a general purpose computer for performing steps of a process is insufficient to satisfy the machine prong of the machine-or-transformation test.

*See Benson*, 409 U.S. at 72 (finding unpatentable a computer-implemented process of converting binary-coded decimal numbers into pure binary code); *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 768 F. Supp. 2d 221, 237 (D.D.C. 2011) ("[N]ominal recitation of a general-purpose computer in a method claim does not tie the claim to a particular machine or apparatus or save the claim from being found unpatentable under § 101."); *DealerTrack, Inc. v. Huber*, 657 F. Supp. 2d 1152, 1154-56 (C.D. Cal. 2009) (finding asserted claim reciting a "central processor" failed to meet the "machine or transformation" test where the patent "does not specify precisely how the computer hardware and database are specifically programmed") (internal quotations omitted); *FuzzySharp Techs. Inc.*, 2009 WL 4899215, at *5 (holding that claims involving "identifying," "comparing," "determining," and "ignoring" data are "*not* tied to any particular machine"); *Ultramerical*, 2010 WL 3360098, at *4 ("[T]he mere act of storing media on a computer memory does not tie the '545 invention to a machine in any meaningful way."); *Graff/Ross Holdings LLP*, 2010 WL 6274263, at *6 (noting a factor that "weights against validity" is "where the recited machines appear to be no more than 'object[s] on which the method operates'") (citing USPTO Interim *Bilski* Guidance, 75 Fed. Reg. at 43,925); *Ex parte Enenkel*, No. APL 2008-2239, 2009 WL 924475, at *6 (B.P.A.I. Apr. 6, 2009) (rejecting the argument that "a claim that that could require the use of a computer is automatically directed to statutory subject matter").

Even claims of the '938 Patent that purport to claim a system provide no specific machine or apparatus for performing the process. These claims merely recite that the system contains a "means" of performing steps of the process. ('938 Patent at 43:25-47, 60:60 – 62:64). For example, independent claim 309, set forth in Appendix A, merely recites a system comprising "*means* for automatically preparing" customized communications, "*means* for appending each communication to a host communication," "*means* for delivering" the

communications, "*means* for receiving" responses, and "*means* for automatically generating one or more replies." ('938 Patent at 61:15-44) (emphasis added). Similarly, a separate independent claim requires a system with "*means* for receiving one or more responses," "*means* for automatically generating one ore more replies," and "*means* for communicating said replies to associated consumer entities." ('938 Patent at 57:10-28) (emphasis added). Without reciting a specific machine or apparatus that limits the claim in a meaningful way, these claims are also insufficient to pass scrutiny under § 101. *See CLS Bank Int'l*, 768 F. Supp. 2d at 251 (finding system claims invalid under § 101 because "system or product claims [cannot] be saved [from invalidity] only by the fact they may nominally recite a 'computer' or 'manufacture.'"); *Bancorp Servs. L.L.C.*, 771 F. Supp. 2d at 1057, 1059, 1067 (finding claims directed to a "life insurance policy management system" invalid under § 101 and rejecting patentee's argument that the *Bilski* framework does not apply to system claims because a "'[s]ystem, does not appear among the four categories of patentable subject matter identified by the statute . . . [t]hus, the claims at issue are process claims and will be analyzed accordingly"); *Every Penny Counts, Inc. v. Bank of Am. Corp.*, No. 2:07-cv-042, 2009 WL 6853402, at *2-3 (M.D. Fla. May 27, 2009) (finding system claims invalid under § 101 and noting that "[s]imply because the process at issue requires machines or computers to work, however, does not mean that the process or system is a machine").

The method claims of the '366 Patent similarly fail to recite *any* "particular" or "specialized" machine or apparatus required to perform *any* of the claimed steps. While the independent method claims of the '366 Patent recite a "computing system" for "automatically preparing" the communications, (*see, e.g.*, '366 Patent at 29:20-22), no detail is provided to

-11-

suggest that this system is anything more than a general purpose computer. As set forth above, this is insufficient to confer patentability.

Similarly, the system claims' recitation of a "computer system," "one or more electronic databases," and "one or more software routines" similarly fails to tie the claims to a specific machine or apparatus in a way that imposes a meaningful limit to the claims. There is no indication that the "computer system," or "databases" are specifically programmed or that the recited "software routines" reside on any particular machine. The claims, such as independent claim 90 set forth in Appendix A, merely recite these general purpose elements in the abstract. Thus, these recitations do not tie the claims to a particular machine. *See Accenture Global Servs. GmbH v. Guidewire Software Inc.*, 691 F. Supp. 2d 577, 597 (D. Del. 2010) (holding that recitations of a "database" did not meet the "machine" prong because "database" does "not imply a specific computer having any particular programming" but rather, is "descriptive of a general computer system at best"); *Cybersource Corp.*, 620 F. Supp. at 1071, 1080 (finding claim directed to "[a] computer readable medium containing program instructions for detecting fraud in a credit card transaction" invalid under *Bilski* because it taught "nothing more than the *idea* of using a programmed computer to implement the process in some way").

Because the processes and systems set forth in the '938 and '366 Patents are not tied to any particular machine or apparatus in a way that imposes a meaningful limitation on the claims, the claims of both the '938 and '366 Patents fail the machine prong of the machine-or-transformation test.

### 2. The Claims Of The '938 And '366 Patents Do Not Transform An Article

None of the claims of the '938 or '366 Patents effect a *transformation* of an article. Instead, the claims recite process steps such as "automatically preparing" communications,

"receiving" communications, "delivering" responses, and "providing" communication content. Collecting information and delivering a customized communication is not a transformation of an article. Furthermore, the purportedly novel feature of the '938 and '366 Patents – the automatic generation of a customized communication or reply – effects no transformation. Because the '938 and '366 Patents fail to recite the transformation of any article in a way that meaningfully limits the claims, the patents also fail the transformation prong of the machine-or-transformation test. *See In re Bilski*, 545 F.3d at 962.

### B. The '938 And '366 Patents Claim An Abstract Idea

The '938 and '366 Patents are drawn to abstract ideas and are patent ineligible under Supreme Court precedent. Specifically, the patents are drawn to the abstract idea of preparing and generating a customized communication or reply in order to avoid the "relatively significant cost" of mass-distribution communications and the "relatively low purchase response rate" that may result from mass marketing communications. (*See* '938 Patent at 1:37-53; '366 Patent at 1:40-48). In other words, the '938 and '366 Patents merely seek to claim a method of conducting a marketing or advertising campaign – specifically, the idea of identifying target groups and communicating relevant information to those groups. Such an abstract idea is not entitled to patent protection. *See Bilski*, 130 S. Ct. at 3231 (finding unpatentable claims directed to the abstract idea of "hedging risk"); *Bancorp Servs.*, 771 F. Supp. 2d at 1057, 1067 (finding unpatentable claims directed to the abstract idea of "managing a life insurance policy"); *Ultramerical*, 2010 WL 3360098, at *6 (finding invalid for claiming an abstract idea claims directed to the "basic idea that one can use advertisement as an exchange or currency"); *Perfect Web Techs., Inc., v. InfoUSA, Inc.*, No. 07-80286, 2008 WL 6153736, at *1, *9-10 (S.D. Fla. Oct. 24, 2008) (finding unpatentable claims directed to a "method for managing bulk e-mail distribution" because claims were directed an abstract idea), *aff'd* 587 F.3d 1324 (Fed. Cir.

2009); *see also Graff/Ross Holdings LLP*, 2010 WL 6274263, at *6 ("'[H]ow business should be conducted,' is a general concept that is unlikely patent-eligible.") (quoting USPTO Interim *Bilski* Guidance, 75 Fed. Reg. at 43, 296).

The fact that claims of the '938 and '366 Patent are limited to providing financial product and/or financial service content does not save these claims from the conclusion that they do not contain patent eligible subject matter. "Field of use" limitations do not render an unpatentable abstract idea patentable. *See In re Bilski*, 545 F.3d at 957 ("Pre-emption of all uses of a fundamental principle in all fields and pre-emption of all uses of the principle in only one field both indicate that the claim is not limited to a particular application of the principle."); *see, e.g., Flook*, 437 U.S. at 586 (claims directed to calculation of an "alarm limit" for signaling dangers in operating a catalytic converter unpatentable though they did not "cover every conceivable application of the formula"). Similarly, the fact that the communication methods claimed in the '938 and '366 Patent may constitute an improvement over the prior art methods of mass communication does not render the abstract idea patentable. *Bancorp Servs.*, 771 F. Supp. 2d at 1066-67 ("But, the fact that the claimed invention represents an improvement over existing methods is not sufficient to render an abstract process patentable.").

Thus, as is further confirmed by their failure to satisfy either prong of the machine-or-transformation test, the claims of the '938 and '366 Patents are directed to non-patentable abstract ideas and are invalid under § 101.

## V.   CONCLUSION

The claims of the '938 and '366 Patents fail the "machine-or-transformation" test and, considered as a whole, are drawn to the abstract idea of generating a communication. These conclusions will not change under any reasonable claim construction. The claims therefore do not constitute patent eligible subject matter and are invalid under 35 U.S.C. § 101. Accordingly,

-14-

Plaintiffs have failed to state a claim upon which relief can be granted and Liberty Mutual's Motion should be granted.

Respectfully submitted,

Dated: August 15, 2011

By: */s/ Jennifer P. Ainsworth*
Jennifer Parker Ainsworth
Texas State Bar No. 00784720
jainsworth@wilsonlawfirm.com
WILSON, ROBERTSON & CORNELIUS, P.C.
909 ESE Loop 323, Suite 400
P.O. Box 7339 [75711]
Tyler, Texas 75701
Telephone: (903) 509-5000
Facsimile: (903) 509-5092

James R. Myers
Nicole M. Jantzi
ROPES & GRAY, LLP
One Metro Center
700 12th Street
Washington, DC 20005
Telephone:  (202)-508-4600
Facsimile:  (202)-508-4650
James.Myers@ropesgray.com
Nicole.Jantzi@ropesgray.com

Attorneys for Defendant,
Liberty Mutual Insurance Company

-16-

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this motion was served on all counsel who have consented to electronic service, Local Rule CV-5(a)(3), on this the 15th day of August, 2011.

*/s/ Jennifer P. Ainsworth*
Jennifer P. Ainsworth
