## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

Phoenix Licensing, L.L.C., an Arizona limited
liability company, and LPL Licensing, L.L.C., a
Delaware limited liability company;

        Plaintiffs,

vs.

Aetna Inc., a Pennsylvania corporation; Aetna Life
Insurance Company,  a Connecticut corporation;
Commerce Bancshares, Inc., a Delaware corporation;
Commerce Bank, N.A., a national banking
association; Cullen/Frost Bankers Inc., a Texas
corporation; Frost National Bank, a national banking
association; HSBC Finance Corporation,  a Delaware
corporation; HSBC Bank USA, N.A.,  a national
banking association; HSBC Bank Nevada, N.A.,  a
national banking association; HSBC Card Services,
Inc.,  a Delaware corporation; HSBC Technology &
Services, Inc.; a Delaware corporation; HSBC Credit
Center, Inc., a Delaware corporation; Liberty Mutual
Insurance Company, a Massachusetts corporation;
MetLife, Inc.,  a Delaware corporation; Metropolitan
Life Insurance Company, a New York corporation;
MetLife Bank N.A.,  a national banking association;
Metropolitan Property and Casualty Insurance
Company,  a Rhode Island corporation;
Mutual of Omaha Insurance Company, a Nebraska
corporation; United of Omaha Life Insurance
Company, a Nebraska corporation; United World
Life Insurance Company, a Nebraska corporation;
Sovereign Bank, a federally chartered savings bank,
UnitedHealth Group, Inc., a Minnesota corporation;
United HealthCare Insurance Company, a
Connecticut corporation; Golden Rule Insurance
Company, an Illinois corporation; United Healthcare
Services, Inc.,  a Minnesota corporation; a PacifiCare
Health Systems LLC, a Delaware corporation;

        Defendants.

**CASE NO. 2:11-cv-285-TJW**

**Jury Trial Demanded**

**Plaintiffs Phoenix Licensing and
LPL Licensing's Opposition to
Liberty Mutual Insurance
Company's Motion to Dismiss.**

## Table of Contents

I.      Introduction. .......................................................................................................1

II.     Liberty's attempt to invalidate LPL's patents under Section 101 is not appropriate
        in the context of this Rule 12(b)(6) motion to dismiss. ....................................1

        A.      Liberty cannot meet its burden of demonstrating that the facts alleged in
                LPL's Complaint fail to state a claim to relief that is "plausible on its
                face." ........................................................................................................2

        B.      Liberty does not come close to meeting its burden of demonstrating that
                each of LPL's 426 claims is invalid under Section 101...........................3

                1.      To invalidate LPL's patents, Liberty must prove, by clear and
                        convincing evidence that each of LPL's 426 claims is invalid under
                        Section 101 under any reasonable claim construction. ...............3

                2.      Liberty does not come close to proving, by clear and convincing
                        evidence, that each of LPL's 426 claims is invalid under Section
                        101 based on any reasonable construction. ..................................5

                3.      Liberty's cases addressing procedural issues do not support
                        Liberty's motion..........................................................................9

III.    LPL's claims are valid under Section 101. ......................................................11

        A.      LPL's claims are valid under Section 101 because they are not directed to
                laws of nature, natural phenomenon, or abstract ideas. ........................12

                1.      Laws of nature or physical phenomenon. ..................................12

                2.      Abstract ideas.............................................................................13

                3.      Liberty's abstract idea argument fails........................................17

        B.      LPL's claims satisfy the machine-or-transformation test. ....................18

                1.      LPL's claims satisfy the "machine" prong of the machine-or-
                        transformation test. ...................................................................19

                2.      LPL's claims satisfy the "transformation" prong of the machine-or-
                        transformation test. ...................................................................25

                        a.      LPL's patent claims transform an article into a different
                                state or thing.....................................................................25

                        b.      This transformation is central to the purpose of the claimed
                                process...............................................................................27

        C.      Factors the Federal Circuit considered in upholding the claims in
                *Ultramercial* confirm that LPL's claims are valid...............................28

IV.     Conclusion. .....................................................................................................30

**Table of Authorities**

## Cases

*American Hoist & Derrick Co. v. Sowa & Sons, Inc.*,
   725 F.2d 1350 (Fed. Cir. 1984)................................................................. 2
*Apex Inc. v. Raritan Computer, Inc.*,
   325 F.3d 1364 (Fed. Cir. 2003).......................................................... 7, 24
*Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*,
   98 F.3d 1563 (Fed. Cir. 1996)................................................................. 2
*Ass'n for Molecular Pathology v. United States PTO*,
   702 F. Supp. 2d 181 (S.D.N.Y. 2010)..................................................... 4
*Bancorp Servs. Inc. v. Sun Life Assurance Co. of Canada*,
   771 F. Supp. 2d 1054 (E.D. Mo. 2011).................................................. 10
*Bilski v. Kappos*,
   130 S. Ct. 3218 (2010)............................................................ 3, 12, 19
*Bird Barrier of Am., Inc. v. Bird-B-Gone, Inc.*,
   2009 U.S. Dist. LEXIS 125475 (C.D. Cal. 2010)..................................... 5
*Cima Labs, Inc. v. Actavis Group HF*,
   2007 U.S. Dist. LEXIS 41516 (D.N.J. 2007).......................................... 5
*Classen Immunotherapies, Inc. v. Biogen Idec.*,
   2011 U.S. App. LEXIS 18126 (Fed. Cir August 31, 2011).................... 14, 15, 17, 23
*CLS Bank Int'l v. Alice Corp. Pty, Ltd.*,
   768 F. Supp. 2d 221 (D.D.C. 2011)................................................. 7, 20
*Collins v. Morgan Stanley Dean Witter*,
   224 F.3d 496 (5th Cir. 2000)............................................................. 4
*Cybersource Corp. v. Retail Decisions, Inc.*,
   620 F. Supp. 2d 1068 (N.D. Cal. 2009).................................................. 10
*Deston Therapeutics LLC v. Trigen Laboratories*,
   723 F. Supp. 2d 665 (D. Del. 2010)....................................................... 5
*Diamond v. Chakrabarty*,
   447 U.S. 303 (1980)............................................................................. 13
*Fuzzysharp Techs., Inc. v. 3D Labs Inc., Ltd.*,
   2009 U.S. Dist. LEXIS 115493  (N.D. Cal., Dec. 11, 2009)................... 10
*Gonzalez v. Kay*,
   577 F.3d 600 (5th Cir. 2009) ......................................................... 1, 2
*Graff/Ross Holdings LLP v. Federal Home Loan Mortgage Corp.*,
   2010 U.S. Dist. LEXIS 141399  (D.D.C. 2010) ...................................... 9
*H&R Block Tax Serv's, Inc. v. Jackson Hewitt Tax Serv., Inc.*,
   2009 U.S. Dist. LEXIS 114208 (E.D. Tex. Nov. 10, 2009) ..................... 19
*Impax Labs, Inc. v. Aventis Pharms. Inc.*,
   545 F.3d 1312 (Fed. Cir. 2008).................................................... 3, 11
*In re Abele*,
   684 F.2d 902 (CCPA 1982) ................................................................. 26
*In re Alappat*,
   33 F.3d 1526 (Fed. Cir. 1994).............................................................. 21
*In re Bilski*,

ii

545 F.3d 943 (Fed. Cir. 2008)..................................................................................... *passim*
*In re Ferguson*,
    558 F.3d 1359 (Fed. Cir. 2009).......................................................................... 20
*Microsoft Corp. v. i4i Ltd. P'ship*,
    131 S. Ct. 2238 (2011) ......................................................................................... 2
*Panduit Corp. v. Dennison Mfg. Co.*,
    810 F.2d 1561 (Fed. Cir. 1987)............................................................................ 3
*Parker v. Flook*,
    437 U.S. 584 (1978)); ........................................................................................ 23
*Phillips v. AWH Corp.*,
    415 F.3d. 1303 (Fed. Cir. 2005)........................................................................... 4
*Progressive Cas. Ins. Co. v. Safeco Ins. Co.*,
    2010 U.S. Dist. LEXIS 120225 (N.D. Ohio. Nov. 12, 2010) ................................... 4, 9, 10, 11
*Prometheus Labs., Inc. v. Mayo Collaborative Servs*,
    628 F.3d 1347 (Fed. Cir. 2010)........................................................................... 25
*Research Corp. Techs., Inc. v. Microsoft Corp.*,
    627 F.3d 859 (Fed. Cir. 2010).......................................................... 13, 15, 16
*Schreiber v. Eli Lilly & Co.*,
    2006 U.S. Dist. LEXIS 13477 (E.D. Pa. 2006) ..................................................... 5
*Ultramercial v. Hulu*,
    2011 U.S. App. LEXIS 19048 (Fed. Cir. Sept. 15, 2011) .............................. *passim*
*Ultramercial v. Hulu*,
    2010 U.S. Dist. LEXIS 93453 (C.D. Cal. 2010)..................................................... 11
*Yangaroo Inc. v. Destiny Media Techs.*,
    2009 U.S. Dist. LEXIS 82052 (E.D. Wis. 2009) ..................................................... 5

**Statutes**

35 U.S.C. §112..................................................................................................... 7, 24
35 U.S.C. §131......................................................................................................... 2
35 U.S.C. §282................................................................................................. 1, 2, 3

**Rules**

P.R. 4-1, 4-2, 4-3, 4-4, 4-5, and 4-6 ....................................................................... 5
Rule 12(b)(6).......................................................................................................... 1

I.      **Introduction.**

Liberty brings this 12(b)(6) Motion to Dismiss in an attempt to invalidate LPL's patents. Liberty's motion fails at every level.

In <u>Section II</u> we present two grounds why Liberty's motion should be denied without even proceeding to the merits of Liberty's claim that LPL's patents are invalid:

*First*, a complaint can be dismissed under Rule 12(b)(6) only when it fails to allege sufficient facts to render a claim "plausible."  *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). Based on the facts alleged in LPL's Complaint, the validity of LPL's patents is not only "plausible" – it must be presumed as a matter of law.  35 U.S.C. §282.

*Second*, if the law were different – that a patent could be invalidated under Section 101 in a motion to dismiss – Liberty's general conclusions would not come close to meeting its burden of proving, by clear and convincing evidence, that all of LPL's 426 patent claims are invalid.

In <u>Section III</u>, we demonstrate that LPL's claims are valid under any articulation of the Section 101 standard.  Specifically, we demonstrate that LPL's claims are valid because they:

- are not directed to laws of nature, physical phenomenon, or abstract ideas;
- satisfy the machine-or-transformation test; and
- align with the factors recently considered by the Federal Circuit in *Ultramercial*.

*See Ultramercial v. Hulu*, 2011 U.S. App. LEXIS 19048, *13 (Fed. Cir. Sept. 15, 2011).

II.     **Liberty's attempt to invalidate LPL's patents under Section 101 is not appropriate in the context of this Rule 12(b)(6) motion to dismiss.**

There are two independent grounds why Liberty's 12(b)(6) motion should be denied without even proceeding to the merits of Liberty's claim that LPL's patents are invalid under Section 101.  Each is addressed in turn.

**A.      Liberty cannot meet its burden of demonstrating that the facts alleged in LPL's Complaint fail to state a claim to relief that is "plausible on its face."**

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is <u>plausible on its face</u>." *Gonzalez* 577 F.3d at 603 (emphasis added).  Because Liberty's motion asserts that LPL's patents are invalid under Section 101, Liberty must demonstrate that LPL's Complaint failed to include factual content, accepted as true, sufficient for the Court to infer that the validity of LPL's patents is "plausible."  Liberty cannot meet this burden.

Accepting the facts alleged in LPL's Complaint as true, the Court can reasonably infer that is it "plausible" that LPL's patents are valid.  Specifically,

(1)   LPL alleged in its Complaint that the '366 and '938 patents were granted (and thus examined) by the United States Patent and Trademark Office.  Complaint at ¶¶ 42, 48.

(2)    The Patent Office issues patents only if "it appears that the applicant is entitled to a patent under the law."  *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2242 (2011) (quoting 35 U.S.C. §131).

(3)   As a result, "[w]hen a patent has been examined and duly granted, judicial review must give due weight to the presumption of validity."  *Applied Materials, Inc. v. Advanced Semiconductor Materials Am., Inc.*, 98 F.3d 1563, 1569 (Fed. Cir. 1996) (citing 35 U.S.C. §282).  "The presumption of validity is based on the presumption of administrative correctness of actions of the agency charged with examination of patentability."  *Id.*; *see also Microsoft*, 131 S. Ct. at 2243 (quoting *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359 (Fed. Cir. 1984) ("the basic proposition that a government agency such as the [PTO] was presumed to do its job")

This presumption applies to all requirements of the Patent Statute – the statute provides no

2

exception for challenges based on Section 101.  *See Panduit Corp. v. Dennison Mfg. Co.*, 810 F.2d 1561, 1570 (Fed. Cir. 1987) ("The presumption mandated by § 282 is applicable to all of the many bases for challenging a patent's validity.").

Because it is presumed that the Patent Office did its job, the allegations in LPL's Complaint are more than sufficient to show that it is "plausible" that LPL's patents are valid – they are sufficient to show that their validity is presumed.  Accordingly, Liberty's motion to dismiss must be denied.

> **B.     Liberty does not come close to meeting its burden of demonstrating that each of LPL's 426 claims is invalid under Section 101.**

Liberty's motion also fails because Liberty does not come close to satisfying its burden of demonstrating, by clear and convincing evidence, that each of LPL's 426 claims is invalid under Section 101 based on all reasonable claim constructions.

> **1.     To invalidate LPL's patents, Liberty must prove, by clear and convincing evidence that each of LPL's 426 claims is invalid under Section 101 under any reasonable claim construction.**

"[A] party challenging patent validity has the burden to prove its case with clear and convincing evidence."  *Impax Labs, Inc. v. Aventis Pharms. Inc.*, 545 F.3d 1312, 1314 (Fed. Cir. 2008).

Unless there "is no claim construction dispute," claim construction "is an important first step in a §101 analysis."  *In re Bilski*, 545 F.3d 943, 951 (Fed. Cir. 2008) (*en banc*).  Because a Section 101 analysis turns on whether "the claimed invention is outside the scope" of patentable subject matter, *Bilski v. Kappos*, 130 S. Ct. 3218, 3223 (2010), unless there is no potential claim construction dispute, the Court cannot assess the merits of a Section 101 argument without first determining the scope of the asserted claims – *i.e.*, construing the claims.  *See, e.g., Ass'n for*

*Molecular Pathology v. United States PTO*, 702 F. Supp. 2d 181, 214 (S.D.N.Y. 2010), *aff'd in part rev'd in part on other grounds*, 2011 U.S. App. LEXIS 15649 (Fed. Cir. July 29, 2011) ("Before considering the patent-eligibility of a patent claim [under §101], the disputed terms in the claims must be construed in order [to] ensure the scope of the claim is accurately assessed.").

Because:

(1)     claim construction is an important first step in a Section 101 analysis, and

(2)     claims cannot be construed in the context of a 12(b)(6) motion to dismiss,[1]

a patent cannot be invalidated under Section 101 in a 12(b)(6) motion unless there is no potential claim construction dispute relevant to the Section 101 analysis for any claim terms.  If there is a potential for disputed claim terms, "[w]ithout the benefit of the prosecution history and the parties' arguments on claim construction," the "record that the Court may consider on a 12(b)(6) motion – the complaint and the attached patent – is insufficient for the Court to construe the patent claims contrary to plaintiff's allegations of infringement and rule that it is invalid." *Progressive Cas. Ins. Co. v. Safeco Ins. Co.*, 2010 U.S. Dist. LEXIS 120225, at *9 (N.D. Ohio. Nov. 12, 2010) (denying Section 101 motion to dismiss).  *See, also*:

- *Molecular Pathology*, 2010 U.S. Dist. LEXIS 35418, at *92 ("Before considering the patent-eligibility of a patent claim [under §101], the disputed terms in the claims must be construed in order to ensure the scope of the claims is accurately assessed.");

- *Deston Therapeutics LLC v. Trigen Laboratories*, 723 F. Supp. 2d 665, 672 (D. Del.

---

[1]     This is because (a) when adjudicating a 12(b)(6) motion, the Court cannot consider evidence outside the four corners of a Complaint (*Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) ("In considering a motion to dismiss for failure to state a claim [under 12(b)(6)], a district court must limit itself to the contents of the pleadings, including attachments thereto.")), and (b) to determine whether or not a claim covers patentable subject matter under Section 101, if the claim terms are disputed, the Court must consider several sources of evidence outside the four corners of a complaint, such as the prosecution history and extrinsic evidence.  *See, Phillips v. AWH Corp.*, 415 F.3d. 1303, 1317 (Fed. Cir. 2005) (*en banc*) ("a court should also consider the patent's prosecution history.") (internal quotations omitted).

2010) (denying motion to dismiss "in light of the jurisprudence holding that claim construction is generally not appropriate on a motion to dismiss");

- *Bird Barrier of Am., Inc. v. Bird-B-Gone, Inc.*, 2009 U.S. Dist. LEXIS 125475, *7-8 (C.D. Cal. 2010) (denying motion to dismiss and holding that "claim construction is inappropriate" at the 12(b)(6) stage *inter alia* because "prosecution histories" are not properly before the Court);

- *Yangaroo Inc. v. Destiny Media Techs.*, 2009 U.S. Dist. LEXIS 82052, *7-8 (E.D. Wis. 2009) (denying motion to dismiss holding that "the proper time for this Court to address claim construction is not in a motion to dismiss" because (1) "Rule 12(b)(6) … does not permit consideration of matters outside the pleadings," and (2) "the Federal Circuit has authorized district courts to rely on extrinsic evidence") (internal quotations omitted);

- *Cima Labs, Inc. v. Actavis Group HF*, 2007 U.S. Dist. LEXIS 41516, *9 (D.N.J. 2007) (denying motion to dismiss because "the proper time for this Court to address claim construction is not in a motion to dismiss");

- *Schreiber v. Eli Lilly & Co.*, 2006 U.S. Dist. LEXIS 13477, at *17, n.10 (E.D. Pa. 2006) (same).

## 2.   Liberty does not come close to proving, by clear and convincing evidence, that each of LPL's 426 claims is invalid under Section 101 based on any reasonable construction.

Liberty asserts that claim construction proceeding are not necessary and it can bypass the Rule of Practice for Patent Cases before the Eastern District of Texas[2] because the LPL "patent[s'] validity cannot be salvaged by claim construction." Mot. at 7.  According to Liberty, every one of LPL's 426 patent claims are invalid under Section 101 under every reasonable claim construction.  Even if Liberty's 12(b)(6) motion were procedurally proper, Liberty's argument would still fail for two reasons.

<u>First</u>, Liberty's argument is simply incorrect.  As explained below in detail in Section III, the claims of LPL's patents are clearly directed to patentable subject matter – they are not

---

[2]   The Patent Rules include comprehensive procedures designed to facilitate educated and correct rulings in patent cases (such as Section 101 rulings) based on properly construed claims. *See, e.g.*, P.R. 4-1, 4-2, 4-3, 4-4, 4-5, and 4-6.

directed to "abstract ideas" or "purely mental steps."  *Ultramercial*, at *18 (emphasis in original).

 *Second*, Liberty's argument is pure conclusion that does not come close to satisfying Liberty's burden of proving, with clear and convincing evidence, that each of LPL's 426 claims is invalid under Section 101 under all reasonable constructions.  To satisfy this burden, Liberty would need to:

(1) either:

 (a) demonstrate that there are no disputed claim terms in LPL's 426 claims; or

 (b) identify the universe of potential claim constructions for each element of each of LPL's 426 claims; and

(2) explain why each claim, under any potential claim construction, does not meet the requirements of Section 101.

Liberty does not come close to satisfying this burden.  Instead, Liberty:

(1) lumps together all 312 claims of the '938 patent and all 114 claims of the '366 patent (each of which has multiple, differing elements) into "general" categories, and

(2) makes general conclusions about these "general" categories, without addressing all elements of a single claim, much less all potential claim constructions for all elements of all claims.

Mot. at 7-9.  Such general conclusions are not sufficient to invalidate LPL's claims.

 To illustrate this point, how can the Court give any weight to Liberty's argument, critical to its motion, that LPL's claims "recite no specific machine or apparatus" (Mot. at 9) without first determining the scope of the claims?  Simply put, it cannot.  Consider the following two concrete examples, one from each patent.

Example 1 – '366, claim 90:  This claim includes "a computing system …adapted to … automatically prepare a personalized communication document… [and] automatically generate successive personalized communication document."  '366, claim 90.  As part of the claim construction process, LPL will propose that this claim language be construed to recite a specific machine – in particular, a processor that is specially programmed to execute the specific software modules taught in LPL's patents for customizing communications.  *See* analysis in section III(C)(1) below; *see also CLS Bank Int'l v. Alice Corp. Pty, Ltd.*, 768 F. Supp. 2d 221, 237 (D.D.C. 2011) ("[A] computer that has been specifically programmed to perform the steps of a method may no longer be considered a general purpose computer, but instead, a particular machine.")  Liberty did not provide any specific proposed construction for the term "computer system adapted to …" (or for any other term) but apparently contends that this element should be construed to mean something other than a specific machine (*e.g.*, some type of "general purpose computer").  Mot. at 2.  Although it is hard to imagine what possible construction Liberty could propose that would not recite a specific machine and satisfy Section 101, the point remains that the Court must properly construe the claims if the Court was inclined to invalidate any claims under Section 101.

Example 2 – '938, claim 101:  This claim includes the element "means for automatically generating one or more replies."  Because the claim is drafted in means-plus-function format,[3] this claim element incorporates all of the "corresponding structure … described in the specification and equivalents thereof."  35 U.S.C. §112, ¶6.  As part of the claim construction process, LPL would likely propose that this element be construed to include at least a

---

[3]      "It is well settled that '[a] claim limitation that actually uses the word 'means' invokes a rebuttable presumption that § 112, ¶ 6 applies.'"  *Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1371 (Fed. Cir. 2003).

"processor" that "accesses a database 2000" to implement "system software 2500" and the corresponding algorithm in the "automated reply modules."  For example, Figure 21 discloses structure corresponding to "means for automatically generating one or more replies" – "FIG. 21 is a



Fig. 21

simplified overview of an embodiment of the invention showing important features of the system software and <u>reply generation module</u>."  '938, 5:24-27 (emphasis added).  Accordingly, this claim element, properly construed, would likely include the specific structures found in Figure 21 including a "processor" that "accesses a database 2000" to implement "system software 2500" and the corresponding algorithm in the "automated reply modules."  Figure 21; '938, 34:25-31.  Liberty may contend that the corresponding structure for this claim element is not depicted in Figure 21.  Mot. at 10-11.  Again, while it is hard to imagine any reasonable construction that would not satisfy Section 101, at best for Liberty, this claim element is disputed and cannot be resolved in the context of a 12(b)(6) motion.

Liberty's attempt to substitute generic conclusions for the required claim construction process is grossly insufficient.  The failure of Liberty's approach is demonstrated by the Appendix accompanying its motion, where Liberty highlights four of LPL's 426 claims in green, blue, and yellow and asserts: "[t]his shading illustrates that the asserted claims are directed to abstract ideas."  Mot., Appendix A.  Liberty's assertion fails at every level:

- Liberty has no idea if these four claims will be asserted against Liberty or, if they are,

8

that the asserted claims will be limited to these four claims;

- Liberty ignores all of LPL's dependent claims;

- if these were the only four asserted claims, shading claims in green, blue, and yellow is not a substitute for identifying all reasonable claim constructions using the comprehensive set of procedures set forth in the Patent Local Rules; and

- Liberty's shading is neither a substitute for any valid analysis nor even helpful in determining whether the claims are "abstract ideas" directed to a "<u>purely</u> mental steps." *See Ultramercial* at *18 (emphasis in original).

> **3.    Liberty's cases addressing procedural issues do not support Liberty's motion.**

Liberty cites numerous cases purportedly as precedent where "[d]istrict courts can and have invalidated patents in a motion to dismiss under *Bilski*."  Mot. at 6.  None support Liberty's contention that LPL's patents can be invalidated in the context of this 12(b)(6) motion to dismiss.

<u>*First*</u>, nearly all cases cited by Liberty actually stand for the opposite proposition – that Section 101 issues are not appropriately adjudicated at the motion to dismiss stage.  For example, Liberty cites *Graff/Ross Holdings LLP v. Federal Home Loan Mortgage Corp.*, 2010 U.S. Dist. LEXIS 141399  (D.D.C. 2010).  Mot. at 6.  But, as another district court noted:

> [In *Graff/Ross*], the magistrate judge rejected the defendant's argument that a 12(b)(6) motion to dismiss based on the issue of validity was proper, and instead found that "[a]lleging that a patent is invalid under Section 101 is … more appropriately disposed of on a motion for summary judgment."

*Progressive*, 2010 U.S. Dist. LEXIS 120225, at *14 (quoting *Graff/Ross*, at *6) (emphasis added).  The court in *Graff/Ross* converted the motion to dismiss into a motion for summary judgment because, at the time of the motion (several years into the case), the court had the benefit of the parties' claim construction briefs, complete with evidentiary support that could not

be considered in a motion to dismiss.  *Id.*  Here, the Court does not have such claim construction briefs and evidence and, as a result, cannot convert this motion into a motion for summary judgment.

Liberty's reliance on three other district court cases – *Cybersource Corp. v. Retail Decisions, Inc.*, 620 F. Supp. 2d 1068 (N.D. Cal. 2009); *Fuzzysharp Techs., Inc. v. 3D Labs Inc., Ltd.*, 2009 U.S. Dist. LEXIS 115493  (N.D. Cal., Dec. 11, 2009); and *Bancorp Servs. Inc. v. Sun Life Assurance Co. of Canada*, 771 F. Supp. 2d 1054 (E.D. Mo. 2011) – suffers the same flaws. None of these cases resolved motions to dismiss, where the court would be limited to the four corners of the Complaint.  Instead, they all resolved summary judgment motions, where the courts were not so limited.  *See Cybersource*, at 1070 ("Defendant brings a motion for summary judgment of invalidity [under] 35 U.S.C. section 101"); *FuzzySharp*, at *1 ("The parties are presently before the Court on Defendant's Motion for Summary Judgment of Invalidity under 35 U.S.C. § 101."); *Bancorp*, at 1056 ("This matter is before the Court on the motion of defendant … for summary judgment").  And, unlike this case, all three of those summary judgment motions were filed after the parties submitted claim construction papers, providing the Court with evidence and argument on claim construction.  *See Cybersource*, at 1071 ("the parties filed their joint claim construction statement"); *FuzzySharp*, at *2 (referring to parties' claim construction briefs); *Bancorp*, at 1058 ("The parties have submitted two rounds of briefing on claims construction issues").

Accordingly, if anything, Liberty's cases demonstrate that proper claim construction proposals and briefs are required to rule on the Section 101 issues raised in this motion.  *See Progressive*, at *14-15 (distinguishing *Graff/Holdings*, *Cybersource*, and *FuzzySharp* because "[i]n this case, plaintiff and defendants have not yet had the opportunity to even propose terms

10

for claim construction, nor can the Court consider the prosecution history.").

     *Second*, *Ultramercial, LLC v. Hulu*, 2010 U.S. Dist. LEXIS 93453 (C.D. Cal. 2010), does not support Liberty's motion for two critical reasons:

(1) *Ultramercial* "did not discuss the procedural posture of the case or the presumption of validity and a patent challenger's burden to prove invalidity by clear and convincing evidence [addressed above]." *Progressive*, at *10 (dismissing Defendant's reliance on *Ultramercial* because "[w]ithout such analysis, the Court finds that *Ultramercial* does not support defendants' argument that finding the patent to be invalid at such an early stage in the litigation is appropriate." *Progressive*, at *11).

(2) More importantly, as discussed in detail in Section III(D) below, the Federal Circuit recently reversed the decision cited by Liberty. *Ultramercial v. Hulu*, 2011 U.S. App. LEXIS 19048 (Fed. Cir. Sept. 15, 2011).

## III.    LPL's claims are valid under Section 101.

     As demonstrated above, (a) it is improper to evaluate the validity of LPL's patents in the context of a Rule 12(b)(6) motion, and (b) if it were proper, Liberty does not come close to proving, by clear and convincing evidence, that each claim is invalid under Section 101 based on any reasonable construction. As demonstrated below, LPL's patents are valid under Section 101.

     "An issued patent enjoys a presumption of validity. … [A] party challenging patent validity has the burden to prove its case with clear and convincing evidence." *Impax Labs,* 545 F.3d at 1314. Accordingly, it is Liberty's burden to demonstrate, with clear and convincing evidence, that LPL's patents are not valid under Section 101. Liberty cannot meet this burden under any articulation of the Section 101 standard, specifically,

- the "laws of nature, natural phenomenon, or abstract idea" test set forth in *Bilski*;

- the "machine-or-transformation test;" and

- the factors recently set forth by the Federal Circuit in *Ultramercial*.

As a result, Liberty does not come close to meeting its burden of demonstrating, with clear and convincing evidence, that any claim, let alone all 426 claims, is invalid under Section 101.

### A.    LPL's claims are valid under Section 101 because they are not directed to laws of nature, natural phenomenon, or abstract ideas.

In *Bilski v. Kappos*, 130 S. Ct. 3218 (2010), the Supreme Court held that the question of Section 101 patentability turns on whether the claimed invention is directed to "laws of nature, physical phenomenon, or abstract ideas." *Id*. at 3225.  "In line with the broadly permissive nature of §101's subject matter eligibility principles, judicial case law has created only three categories of subject matter outside the eligibility bounds of §101 – laws of nature, physical phenomena, and abstract ideas." *Ultramercial*, at *7, citing *Bilski*, 130 S. Ct. at 3225.

Accordingly, to demonstrate that LPL's patents are invalid under Section 101, Liberty has the burden of demonstrating that every claim of the '938 and '366 patents is directed to (1) a law of nature, (2) a physical phenomenon, or (3) an abstract idea.  Because Liberty cannot meet this burden for any claim (let alone all 426 claims), Liberty's motion fails.

### 1.    Laws of nature or physical phenomenon.

A law of nature or physical phenomenon is a "fundamental truth," *i.e.*, a principle or formula, which, although perhaps previously undiscovered, has always been "part of the storehouse of knowledge of all men." *Bilski*, at 3225.  For example, "Einstein could not patent his celebrated law that $E=mc^2$; nor could Newton have patented the law of gravity [because] [s]uch discoveries are manifestations of … nature." *Diamond v. Chakrabarty*, 447 U.S. 303,

12

309, (1980) (internal quotations omitted).

LPL's patents do not claim any law of nature or physical phenomenon (*e.g.*, gravity), but instead claim specific computerized applications for generating customized documents. Liberty does not assert that LPL's patents claim a law of nature or a physical phenomenon.

### 2.  Abstract ideas.

The law draws a distinction between:

(1)  pure mental steps, which are considered too abstract to be patentable under Section 101, and

(2)  "inventions with specific applications or improvements to technologies in the marketplace are not likely to be so abstract" to be unpatentable under Section 101.

*Ultramercial*, *12, quoting *Research Corp. Techs., Inc. v. Microsoft Corp.*, 627 F.3d 859, 869 (Fed. Cir. 2010). The Federal Circuit has articulated two ways to determine if inventions cover "specific applications or improvements to technologies in the marketplace" and are therefore not "abstract ideas" under Section 101:

(1)  if claims are not "purely mental steps," for example, require not only the processing of data (that can be done in one's head) but also a physical implementation of the processed data, the claims are patentable applications and not "abstract ideas" under Section 101, and

(2)  if the applications to which the claims are directed are "functional and palpable," the claims are patentable applications and not "abstract ideas" under Section 101.

Applying either approach demonstrates that LPL's claims are not "abstract ideas" under Section 101. These two approaches are applied in turn:

*First*, LPL's patent claims do not cover "abstract ideas" because:

13

(1)     claims that require not only processing data, but also making use of that processed

data in a physical implementation, are not "abstract ideas," and

(2)     all of LPL's claims require making use of processed data to physically generate a

product – *i.e.*, personalized communication documents or automated replies.

That a physical implementation of processed data moves a claim "from abstract scientific

principle to specific [patentable] application" was recently reaffirmed by the Federal Circuit in

*Classen Immunotherapies, Inc. v. Biogen Idec.*, 2011 U.S. App. LEXIS 18126, *28 (Fed. Cir

August 31, 2011).  In *Classen*, the Federal Circuit drew a distinction between (1) claims directed

to the mental steps of "collecting and comparing known information," and (2) claims that also

included "the physical implementation of the mental step."  *Id*. at *25, *26.  The Federal Circuit

held that, although the former claims were unpatentable as abstract ideas, the latter claims were

patentable because these claims are "mov[ed] from abstract scientific principle to specific

application," and therefore "the subject matter of these [claims] traverses the coarse eligibility

filter of §101."  *Id*. at *24.

        *Classen* applies directly to LPL's claims.  In *Classen*, the "physical implementation" that

made the claims patentable was using collected and processed information to immunize patients.

Correspondingly, the "physical implementation" in LPL's claims is using collected and

processed information to "automatically generat[e]" or "automatically prepar[e]" a customized

marketing document.  *See* Mot. at 7-8 (noting that a version of this limitation is present in all

LPL claims).  In both cases, the required step is not a mere mental construct that could be

performed in one's head; instead, the required step is manifested physically.  Just as immunizing

a patient is not a pure mental process, generating a customized document is not a mental process

that can be performed in one's head.  Rather, a physical printer (or other output device)

physically creates a marketing document, such as a customized personal communication

document.  *See, e.g.*, "LASER PRINTER 32" in Figure 2 of the patents:



As the Federal Circuit recently concluded, "[t]he eligibility exclusion for <u>purely</u> mental steps is

particularly narrow." *Ultramercial*, *18 (emphasis in original) (holding claims that include

"interaction with a consumer via an Internet website [are] far removed from purely mental

steps").  Because LPL's patent claims are not limited to purely mental steps (*i.e.*, collecting and

processing information) but require a physical implementation of processed data (*i.e.*, generating

a physical customized document or reply), LPL's claims are valid under Section 101.

> <u>Second</u>, LPL's claims do not cover "abstract ideas" because:

> (1)    claims that are directed to "functional and palpable" applications do not cover

>         "abstract ideas," *Research Corp.*, 627 F.3d at 868, and

> (2)    all of LPL's claims are directed to "functional and palpable" applications.

A claim is directed to a "functional and palpable" application (and therefore not an abstract idea)

if it "recite[s] tangible limitations on performing the [claimed] method."  *See Classen*, 2011 U.S.

App. LEXIS 18126, at *21 ("When presented with the question of 'whether the computer-

conducted method of comparing images was an abstract idea, and thus not patent-eligible under

§101[,] [t]his court concluded that the specified method is 'functional and palpable,' and that the

claims recite <u>tangible limitations on performing the specified method</u> of comparing images.")

(quoting *Research Corp.*, 627 F.3d at 868) (emphasis added).  If a claim requires the presence of specific hardware components, these are tangible limitations that confirm the invention is not abstract.  *See Research Corp.*, 627 F.3d at 869 ("The fact that some claims in the '310 and '228 patents require a "high contrast film," "a film printer," "a memory," and "printer and display devices" also confirm this court's holding that the invention is not abstract.").

LPL's claims all include tangible limitations that confirm the claimed inventions are not abstract.  In particular, hardware components executing specific software routines are at the core of LPL's inventions.  Figure 1 of the patents demonstrates the hardware components of the claimed system.  "FIG. 1 is a hardware block diagram of the preferred embodiment of the invention."  '938, 4:22-23; '366, 4:24-25.  Figure 2 illustrates the specific software routines executed by the hardware.  "FIG 2 is a flow chart diagram of system software used in the preferred embodiment of FIG. 1, and which illustrates the preferred embodiment and method of the invention."  '938, 4:24-26; '366, 4:26-28.  As set forth in these figures, the inventions of the '938 and '366 patents include a "PROCESSOR 12" comprised of "CPU 26," "RAM 28," "MASS STORAGE 30," *etc.* – that have



16

been specially programmed to produce certain effects and results – *i.e.*, certain software modules like the "DATA INPUT MODULE," "DATABASE MODULE, "PROCESSOR MODULE," and "SALES PRESENTATION AND OUTPUT MODULES."

The various claims of LPL's patents, properly construed, cover these one or more of the hardware components and software routines depicted in these figures.  For example, claim 35 of the '366 patent requires "one or more software routines executing on the computing system which are adapted to …automatically generat[e] customized communications," while claim 41 of the '938 patent similarly requires "automatically … preparing customized communications." These claims thus require ties to a processor or CPU (*see* Figure 1) that execute specific steps that comprise the "processor module" algorithm routine (*see* Figure 2).  *See also* analysis of '938 "means-plus-function" claims below.  As the Federal Circuit recently confirmed, "[f]ar from abstract, advances in computer technology – both hardware [LPL's claimed "computing system"] and software [LPL's claimed "software routines"] – drive innovation in every area of scientific and technical endeavor."  *Ultramercial*, *16 (holding claims that includes computer and software limitations patentable under Section 101).

Because LPL's claims recite tangible limitations (*i.e.*, limitations using hardware to execute software applications), LPL's claims cover "functional and palpable applications" and do not cover "abstract ideas" under Section 101.  *See Classen*, 2011 U.S. App. LEXIS 18126, at *24 (Because "[t]hese claims are directed to a specific, tangible application, … we conclude that the subject matter of these two patents traverses the coarse eligibility filter of §101.").

### 3.    Liberty's abstract idea argument fails.

Liberty's argument – that "both the '938 and '366 Patents are directed to unpatentable abstract ideas" (Mot. at 2) – depends on an inaccurate characterization of LPL's invention and

claims.  Liberty characterizes LPL's inventions as "the idea of identifying target groups and communicating relevant information to those groups."  Mot. at 13.  This characterization is flawed.  LPL does not contend to have invented (nor are its claims directed to) the idea of "identifying target groups and communicating relevant information to target groups."  This idea existed before the LPL inventions.  What the inventor of LPL's patents did invent (and what the claims cover) are <u>specific applications</u> of this idea that use computer hardware executing specific software routines to physically create a specific product – *i.e.*, a customized marketing document.  As the Federal Circuit recently confirmed in *Ultramercial*, the claimed applications of such ideas are patentable:

- "the Patent Act covers and protects any new and useful technical advance, including <u>applied ideas</u>."

- "The <u>application of an abstract idea</u> to a 'new and useful end' is the type of invention that the Supreme Court has described as deserving of patent protection."

- "[T]he '545 patent does not simply claim the age-old idea that advertising can serve as currency.  Instead the '545 patent discloses a <u>practical application of this idea</u>."

*Ultramercial*, *11-13 (emphasis added).

Because Liberty's argument (1) depends on a flawed description of LPL's claims that ignores the specific claim elements at the core of the inventions, and (2) ignores the fact that the claims are directly to practical applications of ideas, not just ideas, Liberty's argument fails.

### B.      LPL's claims satisfy the machine-or-transformation test.

Liberty emphasizes the "machine-or-transformation" test in its analysis of LPL's patents.  That test was the standard for determining Section 101 patentability before the Supreme Court's reversal of the Federal Circuit in *Bilski*.  As set forth above, post-*Bilski* Section 101 patentability

turns on whether a claimed invention is directed to "laws of nature, physical phenomenon, or abstract ideas." *Bilski*, 130 S. Ct. at 3225; *see also Ultramercial*, *9 ("While machine-or-transformation logic served well as a tool to evaluate the subject matter of Industrial Age processes, that test has far less application to the inventions of the Information Age.").

Because, as demonstrated above, Liberty cannot meet its burden of proving by clear and convincing evidence that, under all potential constructions, LPL's inventions are directed to laws of nature, physical phenomenon, or abstract ideas, the Court need not proceed any further to confirm that LPL's patents are valid under Section 101.  Nonetheless, because the Supreme Court held that the machine-or-transformation test could still be a "useful and important clue, an investigative tool, for determining whether some claimed inventions are processes under §101" (*Bilski*, at 3227), we demonstrates how LPL's claims satisfy the machine-or-transformation test.

To satisfy the machine-or-transformation test, a claim need only satisfy one prong – either the machine or transformation prong.  As demonstrated below, LPL's claims satisfy both prongs, further supporting the conclusion that LPL's patent claims are valid under Section 101.

### 1.  LPL's claims satisfy the "machine" prong of the machine-or-transformation test.

To satisfy the machine prong of Bilski's machine-or-transformation test, a claim

(1)  must be "tied to a particular machine," that

(2)  "must not merely be insignificant extra-solution activity," and

(3)  "must impose meaningful limits on the claim's scope."

*In re Bilski*, 545 F.3d at 954, 961-962 (Fed. Cir. 2008); *see also H&R Block Tax Serv's, Inc. v. Jackson Hewitt Tax Serv., Inc.*, 2009 U.S. Dist. LEXIS 114208 at *7 (E.D. Tex. Nov. 10, 2009). LPL's claims satisfy each of these three requirements.

Requirement 1:  LPL's inventions are "tied to a particular machine."  For purposes of

Section 101, a "machine is a concrete thing, consisting of parts, or of certain devices and combination of devices.  This includes every mechanical device or combination of mechanical powers and devices to perform some function and produce a certain effect or result."  *In re Ferguson*, 558 F.3d 1359, 1364 (Fed. Cir. 2009) (internal quotations omitted).  As detailed above, LPL's claims, properly construed, are tied to concrete things – in particular, a combination of computer hardware components that have been specially programmed to produce certain effects and physical results, *e.g.*, a "computing system … adapted to …automatically generat[e] successive personalized communication documents."  '366 patent, 36:1-26.

Requirements 2 and 3:  The ties to a machine are "not insignificant extra-solution activity" and "impose meaningful limits on claim scope."  If a reference to a machine is a mere "insignificant extra-solution activity" that does not "impose meaningful limits on claim scope" the reference is insufficient to satisfy the machine prong of the machine-or-transformation test.  *In re Bilski*, 545 F.3d at 961-962.  Conversely, if the reference is significant and imposes meaningful limits on the claim scope, it is sufficient to satisfy the machine prong.  In the context of claims with ties to computers, this inquiry has taken the form of the question,

(1)   does the claim include a "nominal recitation of a general purpose computer" (which may be deemed insignificant and not imposing meaningful limits on the claim), or

(2)   does it claim a special purpose computer (which is deemed significant and imposing meaningful limits on the claim)?

*See e.g., CLS Bank*, 768 F. Supp. 2d at 237 ("[N]ominal recitation of a general-purpose computer in a method claim does not tie the claim to a particular machine or apparatus or save the claim from being found unpatentable under §101 … On the other hand, a computer that has been specially programmed to perform the steps of a method may no longer be considered a general

purpose computer, but instead, a particular machine.").  For example, a claim directed to a mere idea – like "the idea of identifying target groups" (Mot. at 13) would not satisfy the test by adding a nominal reference to a computer – *e.g.*, "identifying target groups using a computer." This is because such a claim does not indication the role the computer plays in the invention. For example, the computer may merely store data that could just as readily be stored in a human mind.  In contrast, if the claimed computer is "programmed to perform particular functions pursuant to instructions from program software" to execute a specific application, then the computer is an integral component of the invention and is deemed a "special purpose computer" that imparts patentability on the claim.  *In re Alappat*, 33 F.3d 1526, 1566 (Fed. Cir. 1994) (*en banc*) ("[A] general purpose computer in effect becomes a special purpose computer once it is programmed to perform particular functions pursuant to instructions from program software.").

LPL's claims do not claim general purpose computers.  To the contrary, they claim special purpose computers programmed to perform particular functions pursuant to instructions from program software.  For example, referring to the claims discussed above, claim 90 of the '366 patent requires "one or more software routines executing on the computing system which are adapted to …automatically generat[e] successive personalized communication[s]," '366, 36:1-2, while claim 41 of the '938 patent similarly requires "automatically … preparing customized communications."  '938, 38:21-22.  These claims require a processor or CPU (see Figure 1) that is specially programmed to execute the steps that comprise the "processor module" software routine.  *See* Figure 2.  Because these claims are directed to special purpose computers specially programmed to perform specific software routines, they do not claim mere general purpose computers.  Accordingly, the tie to a machine (*i.e.*, computer hardware) is not insignificant extra-solution activity and it imposes meaningful limits on claim scope.

21

Liberty makes two arguments in support of it contention that LPL's claims do not satisfy the "machine" prong of the machine-or-transformation test.  Each argument fails.

<u>Liberty's dependent claim argument</u>:  Liberty argues: "[t]hat the dependent claims can be satisfied by a salesperson – clearly not a machine – establishes that a 'particular' or 'specialized' machine is not contemplated by the claims for performance of the claimed method."  Mot. at 9. Liberty's argument fails for three reasons.

*First*, Liberty is incorrect.  No claim can be satisfied by a human salesperson without a machine.  Whether a particular step added by a dependent claim can be performed by a salesperson without a machine does not mean that the entire claim can be satisfied by a salesperson without a machine.  This is clearly demonstrated by the examples Liberty provides. Liberty points to certain dependent claims of the '938 patent, which add the limitations that the "receiving" step of claim 1 may be performed by "non-electronic means" (claim 24, 36:50-54); the "delivering" step of claim 1 may be performed via "direct mail" or by a "salesperson" (claim 33, 37:33-44); and the "delivering" step of claim 41 may be performed via "telephone" (claim 48, 39:5-8).  Mot. at 9.   However, that the "receiving" or "delivering" steps can be performed by a human salesperson without a machine does not mean that the claim as a whole can be performed without a machine.  Because these are dependent claims, they necessarily include all steps of the independent claim on which they depend, including, for example, "<u>automatically</u> generating one or more replies" (claim 1, 35:5-6; claim 41, 38:42-43), "<u>automatically</u> preparing customized communications" (claim 41, 38:21-22), "<u>automatically</u> . . . replying" (claim 41, 38:21-23), "<u>automatically</u> selecting" (claim 41, 38:25), and "<u>automatically</u> inserting" (claim 41, 38:27-28).  See Appendix A.  These "automatic" elements require a computer – a human salesman cannot perform these steps without a computer.

Moreover, certain claim elements not only require a machine but preclude any human intervention (*i.e.*, a salesman): "said computing system can automatically and <u>without human intervention</u> generate successive customer communications." '366, claim 60; claim 114 (emphasis added).  Liberty does not and cannot explain how a human salesman can perform this step "without human intervention."

*Second*, Liberty's approach of drawing conclusions about the patent-eligibility of LPL's claims based on whether selected elements (certain dependent claims) can be performed without a machine (rather than the claim as a whole) is improper.  "[T]he Court has made clear that it is inappropriate to determine the patent-eligibility of a claim as a whole based on whether selected limitations constitute patent-eligible subject matter."  *In re Bilski*, 545 F.3d at 958 (quoting *Parker v. Flook*, 437 U.S. 584, 594 (1978)); s*ee also Classen*, 2011 U.S. App. LEXIS 18126, *24 (holding a claim valid under Section 101 where all but one claimed steps could be performed in the human mind).

*Third*, Liberty ignores the fact that the limitations added by other dependent claims cannot be performed by a human salesman without the use of a computer, *e.g.*,

- "[t]he method of claim 60, wherein some of said associated databases are accessed over the Internet by the computing system."  '366, claim 61;

- "[t]he method of claim 60, wherein said providing, automatically generating and delivering steps are controlled by a single automated process."  '366, claim 85.

<u>Liberty's "means" claims argument</u>:  Liberty argues that the "system claims" of the '938 patent (which include means-plus-function claim language) "are insufficient to pass scrutiny under § 101" because they "merely recite a 'means' of performing steps of the process" without reciting a specific machine or apparatus."  Mot. at 10-11 (identifying various "means" steps).

23

Liberty's argument fails.

*First*, Liberty's argument betrays a fundamental principle of patent law.  "It is well settled that '[a] claim limitation that actually uses the word 'means' invokes a rebuttable presumption that §112, ¶ 6 applies.'"  *Apex Inc*, 325 F.3d at 1371-72.  35 U.S.C. Section 112, ¶6 provides:

> an element … may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and <u>such claim shall be construed to cover the corresponding structure, material, or acts described in the specification</u> and equivalents thereof.

(emphasis added).  Accordingly, Liberty's approach to construing these "means" limitations, which focuses only on the claim language and ignores the "corresponding structure, materials, or acts described in the specification," disregards Section 112, ¶6.

*Second*, as set forth above in Section II(B), applying the claim construction principles of Section 112, ¶6, the "means" elements in LPL's claims will necessarily be construed to cover the corresponding structure identified in the specification.  35 U.S.C. §112, ¶6.  This corresponding structure limits LPL's "means" claims to specific machines.  For example, Figure 21 discloses structure corresponding to "means for automatically generating one or more replies."  "FIG. 21 is a simplified overview of an embodiment of the invention showing important features of the system software and <u>reply generation module</u>."  '938, 5:24-27.  Accordingly, this claim element, properly construed, will



likely include the specific structures found in Figure 21 including a "processor" that "accesses a database 2000" to implement "system software 2500" and the corresponding algorithm in the "automated reply modules."  Figure 21; 34:25-31.  Similarly, the specification identifies possible structure for the "means for automatically preparing [customized communications]" as "the output preparing means comprises a computer, such as processor 12 and its CPU 26, in conjunction with and operating under the sales presentation and output module (output module)." '938, 24:10-13.  Accordingly, this claim element properly construed would likely include a processor and CPU that are specially programmed to execute the algorithm in the output module software routine, the steps of which are detailed in Figure 13 of the patents.  Liberty's assertion that this element fails to "recit[e] a specific machine or apparatus" (Mot. at 11) is wrong.

LPL's claims satisfy the machine prong of the machine-or-transformation test, which further supports the conclusion that they cover patentable subject matter under Section 101.

### 2.   LPL's claims satisfy the "transformation" prong of the machine-or-transformation test.

Regardless of whether patent claims are tied to a machine, they "satisfy the transformation prong of the machine-or-transformation test [if] they [1] 'transform an article into a different state or thing,' and [2] this transformation is 'central to the purpose of the claimed process.'"  *Prometheus Labs., Inc. v. Mayo Collaborative Servs*, 628 F.3d 1347, 1355 (Fed. Cir. 2010) (quoting *In re Bilski*, 545 F.3d at 962).  LPL's patent claims meet both requirements.

### a.   LPL's patent claims transform an article into a different state or thing.

For physical objects (like a piece of paper), a patent claim transforms an article into a different state or thing if it describes the "physical transformation of physical objects."  *In re Bilski*, 545 F.3d at 962.  For visually depicted objects (like an image on a computer screen), a

patent claim transforms an article into a different state or thing if it describes the "electronic transformation" of "data [that] clearly represent[s] physical and tangible objects" "into a visual depiction."  *In re Bilski*, 545 F.3d at 963 (citing *In re Abele*, 684 F.2d 902, 908-09 (CCPA 1982)).

All LPL claims cover a process that either:

(1)    physically transforms one physical object into another, or

(2)    electronically transforms data representing a physical object into a visual depiction of a physical object.

In particular, all of LPL's claims require "automatically preparing" (*e.g.*, '938, claim 1) or "automatically generating" (*e.g.,* '366, claim 1) customized marketing documents or replies, which can be in the form of either paper or computerized documents.[4]  In the context of paper documents, a blank piece of paper (a physical object) is physically transformed into a customized document (another physical object):



---

4    The patents teach that "A client communication may assume the physical form of a paper or papers which would be integrally attached to a host vehicle, a computerized document which is adapted to be incorporated with a computerized host vehicle, an electronic mail document, and the like."  '366, 6:16-20; '938, 6:37-42.

In the context of a computerized document, the data representing the layout for the particular marketing document (*i.e.*, data representing a physical object) is electronically transformed into the visual depiction of the marketing document (a physical object).

> **b.** **This transformation is central to the purpose of the claimed process.**

<u>'366 patent</u>:  The '366 patent states that the purpose or "object of the present invention is to provide a method and apparatus for preparing client communications." '366, 2;48-50; *see also*, claim 1 ("A method of preparing personalized communications documents"); Title ("Personalized Communication Documents, System and Method for Preparing Same").  Accordingly, transforming a blank piece of paper into a personalized communication is not only central to purpose of the claimed process – it <u>is</u> the purpose of the claimed process.

<u>'938 patent</u>:  The '938 patent states that the purpose of the claimed invention is to "automatically prepar[e] customized replies."  '938 Abstract; *see also*, claim 1 ("A method for automatically preparing customized replies"); *see also*, Title ("Automated Reply Generation Direct Marketing System").  Accordingly, transforming data into a customized reply in the form of a visual depiction is not only central to purpose of the claimed process – it <u>is</u> the purpose of the claimed processes.

\*   \*   \*

Because LPL's claims:

(1) transform an article into a different state or thing, and

(2) this transformation is the purpose of the claimed process,

LPL's claims satisfy the transformation prong of the machine-or-transformation test.

27

**C.** **Factors the Federal Circuit considered in upholding the claims in**
*Ultramercial* **confirm that LPL's claims are valid.**

In *Ultramercial v. Hulu*, 2011 U.S. App. LEXIS 19048 (Fed. Cir. Sept. 15, 2011), the

Federal Circuit recently articulated factors demonstrating what claims are patent-eligible under

the *Bilski* standard.  "This court simply find the claims here to be patent-eligible, in part because

of these factors."  *Ultramercial*, *14.  Each factor the Federal Circuit considered in validating the

*Ultramercial* claims applies to validate LPL's claims, for example:

Factor 1:  "the claimed invention invokes computers and applications of computer

technology."  *Ultramercial*, *12.  LPL's claimed invention invokes computers (the claims

include "a computing system") and applications of computer technology – *i.e.*, using computer

technology for a particular purpose (*e.g.*, using the "computing system" to "automatically

prepar[e] a personalized communication document"), *e.g.*:



'366 claim 1, element [b].

Factor 2:  "Many of these steps are likely to require intricate and complex computer

programming."  *Ultramercial*, *14.  Many steps claimed in LPL's patents are likely to require

intricate and complex computer programming, *e.g.*:

- "preparing customized communications containing information data specific to a
  plurality of consumer entities, by use of a computing system and one or more associated
  databases with information data" '366, claim 60.

Factor 3:  "an Internet website" – "Unlike the claims in *CyberSource*, the claims here

require, among other things, controlled interaction with a consumer via an Internet website,

something far removed from <u>purely</u> mental steps." *Ultramercial*, *18 (emphasis in original).[5]

Certain LPL claims include interaction with a consumer via an Internet website, *e.g.*:

- "receiving at least some responses via consumer interaction with an Internet website" '694, claim 27; and

- "means for receiving at least some responses via consumer interaction with an Internet web site." '938, claim 128.

Indeed, LPL's claims are even less abstract than the claims found valid in *Ultramercial* because, unlike the claims in *Ultramercial*, LPL's claims specify a particular mechanism for delivering content to a consumer.  In *Ultramercial*, the Federal Circuit found the claims at issue were not abstract despite the fact that they did not specific a particular mechanism for delivering content:

> "the broadly claimed method in the '545 patent does not specify a particular mechanism for delivering media content to the consumer (*i.e.*, FTP downloads, email, or real-time streaming).  This breadth and lack of specificity does not render the claimed subject matter impermissibly abstract."

*Ultramercial*, *16.  Because LPL's claims specify particular mechanisms for delivering media content to the consumer, they are less abstract than the claims validated in *Ultramercial*, *e.g.*:

- "said replies are <u>delivered via the Internet</u>" '938, claims 32; 176;

-  "receiving at least some responses <u>via email</u>" '938 claim 89; and

- "means for receiving at least some responses <u>via email</u>"  '938 claim 129.

*   *   *

LPL's claims are valid under any Section 101 analysis.

---

[5]      *See also, Ultramercial*, *14 ("[C]ertain of these steps clearly require specific <u>application to the Internet</u> and a cyber-market environment.  One clear example is the third step, 'providing said media products for sale on an Internet website.' ...  And, of course, if the products are offered for sale on the Internet, they must be 'restricted'—step four – by complex computer programming as well.").

**IV.    Conclusion.**

Liberty's motion fails procedurally.  In addition, LPL's claims are valid under any articulation of the Section 101 standard because they:

- are not directed to laws of nature, physical phenomenon, or abstract ideas;

- satisfy the machine-or-transformation test; and

- align with the factors recently considered by the Federal Circuit in *Ultramercial*.

Accordingly, Liberty's motion should be denied.

| | |
|---|---|
| Date: September 20, 2011 | Respectfully Submitted,<br><br>/s/Richard E. Lyon_____.<br>Gregory Scott Dovel<br>CA State Bar No. 135387<br>E-mail: greg@dovellaw.com<br>Sean A. Luner<br>CA State Bar No. 165443<br>E-mail: sean@dovellaw.com<br>Richard E. Lyon<br>CA State Bar No. 229288<br>Email: rick@dovellaw.com<br>Dovel & Luner, LLP<br>201 Santa Monica Blvd., Suite 600<br>Santa Monica, CA 90401<br>Telephone: (310) 656-7066<br>Facsimile: (310) 656-7069<br><br>S. Calvin Capshaw<br>State Bar No. 03783900<br>Elizabeth L. DeRieux<br>State Bar No. 05770585<br>Capshaw DeRieux, LLP<br>114 E. Commerce Ave.<br>Gladewater, Texas 75647<br>Telephone:  (903) 236-9800<br>Facsimile: (903) 236-8787<br>E-mail: ccapshaw@mailbmc.com<br>E-mail: ederieux@mailbmc.com<br><br><br>ATTORNEYS FOR PLAINTIFFS<br>PHOENIX LICENSING, L.L.C. and<br>LPL LICENSING, L.L.C. |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 20th  day of September, 2011, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

<u>/s/ Richard E. Lyon</u>