**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| Phoenix Licensing, L.L.C., an Arizona limited liability company, and LPL Licensing, L.L.C., a Delaware limited liability company;<br><br>        Plaintiffs,<br><br>vs.<br><br>Aetna Inc., a Pennsylvania corporation; Aetna Life Insurance Company, a Connecticut corporation; Commerce Bancshares, Inc., a Delaware corporation; Commerce Bank, N.A., a national banking association; Cullen/Frost Bankers Inc., a Texas corporation; Frost National Bank, a national banking association; HSBC Finance Corporation, a Delaware corporation; HSBC Bank USA, N.A., a national banking association; HSBC Bank Nevada, N.A., a national banking association; HSBC Card Services, Inc., a Delaware corporation; HSBC Technology & Services, Inc.; a Delaware corporation; HSBC Credit Center, Inc., a Delaware corporation; Liberty Mutual Insurance Company, a Massachusetts corporation; MetLife, Inc., a Delaware corporation; Metropolitan Life Insurance Company, a New York corporation; MetLife Bank N.A., a national banking association; Metropolitan Property and Casualty Insurance Company, a Rhode Island corporation; Mutual of Omaha Insurance Company, a Nebraska corporation; United of Omaha Life Insurance Company, a Nebraska corporation; United World Life Insurance Company, a Nebraska corporation; Sovereign Bank, a federally chartered savings bank, UnitedHealth Group, Inc., a Minnesota corporation; United HealthCare Insurance Company, a Connecticut corporation; Golden Rule Insurance Company, an Illinois corporation; United Healthcare Services, Inc., a Minnesota corporation; and PacifiCare Health Systems LLC, a Delaware corporation;<br><br>        Defendants. | CASE NO. 2:11-cv-00285-DF<br><br>**JURY TRIAL REQUESTED**<br><br>**DEFENDANT LIBERTY MUTUAL INSURANCE COMPANY'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED** |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................ 1

II. LIBERTY MUTUAL'S MOTION IS PROCEDURALLY PROPER AND RIPE FOR ADJUDICATION ......................................................................................................... 2

    A. The Presumption Of Validity Does Not Obviate Motions To Dismiss ............. 2

    B. Claim Construction Is Not Required In Considering A Motion To Dismiss On Section 101 Grounds Because Claims Must Be Considered As A Whole . 3

III. THE CLAIMS OF THE '938 AND '366 PATENTS ARE DRAWN TO UNPATENTABLE ABSTRACT IDEAS ......................................................................... 4

    A. LPL's Attempt To Rewrite The Claims Of The '938 And '366 Patents Does Not Alter The Fact That The Claims Are Directed To Abstract Ideas ............ 5

    B. LPL's Arguments Are Contradicted By Supreme Court Precedent And Recent Federal Circuit Decisions Which Confirm The Unpatentability Of The '938 And '366 Patents ................................................................................ 7

IV. THE CLAIMS OF THE '938 AND '366 PATENTS FAIL THE MACHINE-OR-TRANSFORMATION TEST ............................................................................................. 9

V. CONCLUSION .................................................................................................................. 10

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Accenture Global Servs. GmbH v. Guidewire Software Inc.*,
  691 F. Supp. 2d 577 (D. Del. 2010) ............................................................................6

*Bancorp Servs. L.L.C. v. Sun Life Assurance Co. of Can.*,
  771 F. Supp. 2d 1054 (E.D. Mo. 2011) .....................................................................4, 7

*Bilski v. Kappos*,
  130 S. Ct. 3218 (2010) .............................................................................................2, 3

*Classen Immunotherapies, Inc. v. Biogen IDEC*,
  No. 2006-1634 & 2006-1649, 2011 U.S. App. LEXIS 18126
  (Fed. Cir. Aug. 31, 2011) ............................................................................................9

*CLS Bank Int'l v. Alice Corp. Pty. Ltd.*,
  768 F. Supp. 2d 221 (D.D.C. 2011) ..........................................................................4, 6

*Collins v. Morgan Stanley*,
  224 F.3d 496 (5th Cir. 2000) ......................................................................................3

*Cybersource Corp. v. Retail Decisions, Inc.*,
  620 F. Supp. 2d 1068 (N.D. Cal. 2009), *aff'd*, No. 2009-1358,
  2011 U.S. App. LEXIS 16871 (Fed. Cir. Aug. 16, 2011) ...........................................4

*CyberSource Corp. v. Retail Decisions, Inc.*,
  No. 2009-1358, 2011 U.S. App. LEXIS 16871 (Fed. Cir. Aug. 16, 2011) .....2, 4, 6, 8

*DealerTrack, Inc. v. Huber*,
  657 F. Supp. 2d 1152 (C.D. Cal. 2009) ......................................................................6

*Fort Props., Inc. v. Am. Master Lease, LLC*,
  609 F. Supp. 2d 1052 (C.D. Cal. 2009) ....................................................................10

*FuzzySharp Techs. Inc. v. 3D Labs. Inc.*,
  No. C-07-5948, 2009 WL 4899215 (N.D. Cal. Dec. 11, 2009) ..................................4

*Glory Licensing LLC v. Toys "R" US, Inc.*,
  No. 09-4252, 2011 WL 1870591 (D.N.J. May 16, 2011) ...........................................4

*Gottschalk v. Benson*,
  409 U.S. 63 (1972) ............................................................................................2, 6, 8, 9

*Graff/Ross Holdings LLP v. Fed. Home Loan Mortgage Corp.*,
  No. 07-796, 2010 WL 6274263 (D.D.C. Aug. 27, 2010) ...................................2, 4, 6

*Helmsderfer v. Bobrick Washroom Equip., Inc.*,
   527 F.3d 1379 (Fed. Cir. 2008) .................................................................................................6

*In re Bilski*,
   545 F.3d 943 (Fed. Cir. 2008), *aff'd* 130 S. Ct. 3218 (2010) .........................................7, 9, 10

*In re Ferguson*,
   558 F.3d 1359 (Fed. Cir. 2009) ...............................................................................................10

*Innova Patent Licensing, LLC v. Alcatel-Lucent Holdings*,
   No. 2-10-cv-00251, slip op. (E.D. Tex. Sept. 22, 2011) ............................................................9

*Parker v. Flook*,
   437 U.S. 584 (1978) ........................................................................................................ passim

*Progressive Cas. Insur. v. Safeco Insur. Co.*,
   No. 1:10-cv-1370, 2010 U.S. Dist. LEXIS 120225 (N.D. Ohio Nov. 12, 2010) .......................4

*Ultramercial, LLC v. Hulu, LLC*,
   No. 2010-1544, 2011 U.S. App. LEXIS 19048 (Fed. Cir. Sept. 15, 2011) ...................1, 3, 4, 9

Pursuant to Fed. R. Civ. P. 12(b)(6) and Local Civil Rule 7(f), Defendant Liberty Mutual Insurance Company ("Liberty Mutual") respectfully submits this Reply Brief In Support Of Its Motion To Dismiss For Failure To State A Claim Upon Which Relief May Be Granted (the "Motion").

## I.   INTRODUCTION

The Court should not delay deciding the substance of this Motion because it is procedurally proper at this time and because Plaintiffs Phoenix Licensing, L.L.C. and LPL Licensing, L.L.C. (collectively, "LPL") have not identified any material information or future event that would enable this Court to reach a different or better outcome. LPL argues that this Court must wait to decide that U.S. Patent Nos. 6,999,938 ("the '938 Patent") and 7,890,366 ("the '366 Patent") are unpatentable because: (1) a patent is presumed valid and (2) claim construction proceedings are required. LPL is mistaken. Patent-eligibility is a matter of law that can be decided on the pleadings. Indeed, the Federal Circuit recently affirmed that claim construction is not required in ruling on a motion to dismiss on Section 101 grounds. *Ultramercial, LLC v. Hulu, LLC*, No. 2010-1544, 2011 U.S. App. LEXIS 19048, *4-5 (Fed. Cir. Sept. 15, 2011). And even if claim construction were entertained, there is no ***reasonable*** construction that can save the present claims from their fate as unpatentable subject matter. Specifically, the claims of the '938 and '366 Patents relate to improving marketing and advertising campaigns by providing automated customized communications or replies. This is plainly an abstract idea—a basic business or financial concept—which cannot be patented.

LPL's own arguments illustrate that the claims are drawn to abstract ideas. First, LPL simply ignores the patent claims. Because the claims are practically devoid of structural or

physical claim elements,[1] LPL asks this Court to import limitations into the claims (*e.g.*, "a 'processor' that 'accesses a database []' to implement 'system software []' and the corresponding algorithm…"). But, even if LPL could rewrite its claims to include these elements, those claims would not be patent-eligible. Indeed, the best LPL can hope to gain is the conclusion that *some* of its claims *may* involve a general purpose computer. But including a general purpose computer is insufficient to avoid invalidity under Section 101. *Graff/Ross Holdings LLP v. Fed. Home Loan Mortgage Corp.*, No. 07-796, 2010 WL 6274263, at *7 (D.D.C. Aug. 27, 2010). Second, the notion that LPL's claims are patentable because they have a "specific application" and may be implemented on a computer directly conflicts with Supreme Court precedent, holding that neither a practical application nor use on a computer are sufficient to transform an abstract idea into patentable subject matter. *Parker v. Flook*, 437 U.S. 584, 593-96 (1978); *Gottschalk v. Benson*, 409 U.S. 63 (1972); *see also Bilski v. Kappos*, 130 S. Ct. 3218 (2010). Third, LPL wholly ignores the Federal Circuit's recent decision in *CyberSource*, which invalidated claims drawn to abstract ideas that could be performed in the human mind or by a human using a pen and paper, like here. *CyberSource Corp. v. Retail Decisions, Inc.*, No. 2009-1358, 2011 U.S. App. LEXIS 16871 (Fed. Cir. Aug. 16, 2011). Therefore, LPL's Complaint should be dismissed.

## II.   LIBERTY MUTUAL'S MOTION IS PROCEDURALLY PROPER AND RIPE FOR ADJUDICATION

### A.   The Presumption Of Validity Does Not Obviate Motions To Dismiss

LPL argues that because its patents are presumed valid, the Complaint is "plausible on its face" and cannot be dismissed. Dkt. No. 84 at 2-3. However, LPL fails to identify *any* authority supporting its assertion that the statutory presumption of validity obviates motions to dismiss for

---

[1] A total of *266* claims of the '938 Patent include *no* arguable structure at all. An additional 46 claims of the '938 Patent include "means plus function" claim elements that arguably contain structure, but, do not confer patentability because the only structure associated with these elements, if any, is a general purpose computer. And the '366 Patent claims recite a "computing system"—admittedly "structure," but no more than a general purpose computer.

2

failure to satisfy Section 101 in patent cases, quite simply because no such authority exists. Indeed, the Federal Circuit recently **confirmed** that patentability under Section 101 may be considered on a motion to dismiss. *Ultramercial*, 2011 U.S. App. LEXIS 19048, at *4-5 (considering Section 101 on appeal of a granted motion to dismiss). Because LPL attached the patents-in-suit to its Complaint, this Court can consider them in resolving this Motion.[2]

### B. Claim Construction Is Not Required In Considering A Motion To Dismiss On Section 101 Grounds Because Claims Must Be Considered As A Whole

Contrary to Supreme Court and Federal Circuit precedent, LPL argues that Liberty Mutual must either demonstrate that there are no disputed claim terms or identify all possible claim constructions for each element and explain why each fails Section 101. Dkt. No. 84 at 6. But LPL is mistaken. The Supreme Court in *Bilski v. Kappos* stated that the Section 101 analysis must focus on the subject matter *as a whole*. *Bilski*, 130 S. Ct. at 3230. Therefore, this Court must consider the claimed *invention as a whole*, not interpret each and every claim term in isolation.[3] The approach advocated by LPL, and the claim constructions it manufactured to avoid focus on the claims *as a whole*, directly contradicts this mandate.

Indeed, consistent with the Supreme Court's approach, the Federal Circuit in *Ultramercial* recently confirmed that claim construction is **not required** before deciding a motion to dismiss on Section 101 grounds. *Ultramercial*, 2011 U.S. App. LEXIS at *4-5 ("This court has never set forth a bright line rule requiring district courts to construe claims before determining subject matter eligibility…. claim construction may not always be necessary for a

---

[2] *Collins v. Morgan Stanley*, 224 F.3d 496, 498 (5th Cir. 2000) ("In considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto.").

[3] Here LPL argues that Liberty Mutual's Motion is deficient because it does not specifically provide constructions for those claims that will be asserted by LPL. Dkt. No. 84 at 8-9. But, LPL's Complaint *failed to identify a single allegedly infringed claim*. Dkt. No. 1. LPL cannot use its vague pleading as both a sword and a shield. This alleged "deficiency" is entirely a problem of LPL's own making and is a predictable result of filing a vague Complaint that does not specify which claims—out of *426* issued claims—it intends to assert.

§ 101 analysis.");[4] *see generally CyberSource*, 2011 U.S. App. LEXIS 16871.[5] Further, LPL's statement that "a patent cannot be invalidated under Section 101 in a 12(b)(6) motion unless there is no potential claim construction dispute" (Dkt. No. 84 at 4) is demonstrably false. *Glory Licensing LLC v. Toys "R" US, Inc.*, No. 09-4252, 2011 WL 1870591 (D.N.J. May 16, 2011); *see generally Ultramercial*, 2011 U.S. App. LEXIS 19048, at *4-5; *Graff/Ross Holdings*, 2010 WL 6274263. Quite simply, claim construction is not required.

### III. THE CLAIMS OF THE '938 AND '366 PATENTS ARE DRAWN TO UNPATENTABLE ABSTRACT IDEAS

When viewed as a whole, LPL's ***claims*** relate to the abstract idea of improving marketing campaigns by providing automated customized communications or replies.[6] This is plainly an abstract idea—a basic business or financial concept—which cannot be patented. *CLS Bank Int'l v. Alice Corp. Pty. Ltd.*, 768 F. Supp. 2d 221, 243; *see also CyberSource*, 2011 U.S. App. LEXIS 16871, at *12; Dkt. No. 52 at 13-14. Tellingly, LPL's 30-page brief all but ignores the language of the 426 claims, preferring instead to rewrite those claims through claim construction arguments that seek to avoid unpatentability. However, even if claim construction were entertained, there is no ***reasonable*** construction that can save these unpatentable claims.

---

[4] Yet LPL argues (Dkt. No. 84 at 11) that the *Ultramercial **district court case*** does not support this Motion, relying on the Northern District of Ohio's statement, in *Progressive Casualty Insurance*, that *Ultramercial* did not consider the presumption of validity. *Progressive Cas. Insur. v. Safeco Insur. Co.*, No. 1:10-cv-1370, 2010 U.S. Dist. LEXIS 120225 (N.D. Ohio Nov. 12, 2010). But, *Progressive Casualty Insurance* was decided ***prior to the Federal Circuit's opinion*** in *Ultramercial* and therefore provides no guidance here.

[5] As noted in Liberty Mutual's Motion, many courts have resolved Section 101 issues without first resolving claim construction disputes. Dkt. No. 52 at 6-7. Indeed, while LPL attempts to distinguish *CyberSource*, *FuzzySharp*, and *Bancorp*, the courts in each of these cases acknowledged that claim construction was not necessary to resolve Section 101 issues. *See, e.g., Bancorp Servs. L.L.C. v. Sun Life Assurance Co. of Can.*, 771 F. Supp. 2d 1054, 1059 (E.D. Mo. 2011) ("The Court has decided to address Sun Life's § 101 arguments before proceeding with claims construction."); *FuzzySharp Techs. Inc. v. 3D Labs. Inc.*, No. C-07-5948, 2009 WL 4899215, at *2, n.1 (N.D. Cal. Dec. 11, 2009) (declining to complete claim construction before ruling on Section 101 summary judgment motion); *Cybersource Corp. v. Retail Decisions, Inc.*, 620 F. Supp. 2d 1068, 1073 (N.D. Cal. 2009), *aff'd*, No. 2009-1358, 2011 U.S. App. LEXIS 16871 (Fed. Cir. Aug. 16, 2011) ("[R]uling on defendant's section 101 motion does not require that the claims actually be construed.").

[6] While LPL objects to Liberty Mutual's characterization of this idea, the claims and specification recite as much. The '938 Patent states that it specifically "relates to methods and apparatus suitable for preparing an appropriately customized reply communication to each client." Dkt. No. 1, '938 Patent at 1:19-21. The '366 Patent contains similar language. Dkt. No. 1, '366 Patent at 1:24-28.

4

### A. LPL's Attempt To Rewrite The Claims Of The '938 And '366 Patents Does Not Alter The Fact That The Claims Are Directed To Abstract Ideas

Attempting to avoid dismissal, LPL manufactures two claim construction "disputes" related to the claim terms "computing system" and "means for automatically generating…." Dkt. No. 84 at 7-8. But, these disputes fail to save the claims. As an initial matter, these disputes do not impact all claims. Significantly, LPL provided *no* exemplary claim constructions related to the 266 method claims of the '938 Patent.[7] These 266 claims comprise over **85%** of the '938 Patent's 312 claims and **62%** of the potentially assertable claims in this lawsuit. As set forth in Liberty Mutual's Motion, this claimed method is nothing more than an abstract idea related to business conduct, divorced from any physical machine or transformation. Dkt. No. 52 at 9-14. That LPL glosses over the method claims of its '938 Patent speaks volumes.

Even though the majority of claims of the patents-in-suit are not affected by these "disputes," LPL argues that its claims are not drawn to an abstract idea because the purported novelty of its invention lies in the "specific application[] of this idea [of automated customized marketing] that use[s] computer hardware executing specific software routines to physically create a specific product." Dkt. No. 84 at 18. However, the *266* method claims of the '938 Patent do not recite any hardware at all. With respect to those claims, this argument must fail. And for those claims that arguably recite hardware elements, *even under* the constructions advocated by LPL, the claims remain unpatentable. For example, LPL construes the '366 Patent term "computing system … adapted to … automatically prepare a personalized communication document" as "a processor that is specially programmed to execute the specific software modules taught in LPL's patents for customizing communications." Dkt. No. 84 at 7. However,

---

[7] The "disputed" terms do not appear in independent claims 1, 41, 52, 141, 184, 226, 268, or 308 of the '938 Patent. Likewise, the disputed terms do not appear in any claims depending from these independent claims. Further, while claim 308 is purportedly a "system" claim, it contains only three method steps and no structure.

this "construction" is merely a label meant to satisfy Section 101, developed by impermissibly reading limitations into the claims. LPL fails to identify *any* programming or algorithm (let alone any "special" programming) set forth in the claims or even disclosed in the specification. In fact, the specification states that the "design and configuration" of the computing system processor "is not limiting." Dkt. No. 1, '366 Patent at 7:35-43. Instead, the claims simply recite a function ("automatically prepare"), not a recitation of *how* a computer may be specially programmed to achieve this function. There are many ways to draft patent claims, but they may be drafted only once. LPL drafted claims that do not recite a processor with specialized programming. LPL cannot rewrite these claims to satisfy Section 101 now.[8]

Because no special programming exists, the most "computing system" can be construed to cover is an unpatentable general purpose computer. *Graff/Ross Holdings* is instructive here. There, a "computer system" and "processor"—essentially the same terms at issue here—were not "particular machine[s]" because the claim did not recite that the processor was programmed in a particular way. *Graff/Ross*, 2010 WL 6274263, at *7. Likewise, the Central District of California found that where the patent did "not specify precisely how the computer hardware and database are 'specially programmed,'" the claim was drawn solely to a general purpose computer. *DealerTrack, Inc. v. Huber*, 657 F. Supp. 2d 1152, 1156 (C.D. Cal. 2009). Indeed, the Federal Circuit stated: "we have never suggested that simply reciting the use of a computer to execute an algorithm that can be performed entirely in the human mind [is patentable]."[9]

---

[8] *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1383 (Fed. Cir. 2008) ("Courts cannot rewrite claim language.").
[9] *CyberSource*, 2011 U.S. App. LEXIS 16871, at *23; *see also Benson*, 409 U.S. at 71-72 (invalidating claims for converting binary-coded decimal numerals that was performed on a computer); *Flook*, 437 U.S. at 586 (invalidating claims for computerized calculations for adjusting an alarm limit); *Accenture Global Servs. GmbH v. Guidewire Software Inc.*, 691 F. Supp. 2d 577, 596-97 (D. Del. 2010) (holding unpatentable a claim reciting a "data processing system," a "claim database," "a display device" having multiple screens, and a "searchable claim database" which did not impose meaningful limits on the claim); *CLS Bank*, 768 F. Supp. 2d at 241.

Similarly, with respect to LPL's second exemplary "dispute," LPL construes "means for automatically generating one or more replies" as "a 'processor' that 'accesses a database 2000' to implement 'system software 2500' and the corresponding algorithm in the 'automated reply modules.'" Dkt. No. 84 at 7-8. However, this construction recites no more than a general purpose computer that "accesses" data and "implements" software—basic functions performed by every computer. This is not "specialized" programming, is insufficient to convert an abstract idea into patentable subject matter, and does not preclude a finding that the patents fail to claim patentable subject matter.

B. **LPL's Arguments Are Contradicted By Supreme Court Precedent And Recent Federal Circuit Decisions Which Confirm The Unpatentability Of The '938 And '366 Patents**

LPL's contention that its claims are patentable because they have a "specific application" that is "functional and palpable" (Dkt. No. 84 at 13-18) directly conflicts with Supreme Court precedent. That an abstract idea is used for a specific purpose or with a specific application is, alone, insufficient to save the idea from unpatentability because nearly all abstract ideas have some specific purpose or specific application.[10] The Supreme Court in *Parker v. Flook* explained that where a claim is directed to an abstract idea, "'even if the solution is for a specific purpose, the claimed method is nonstatutory.'" *Flook*, 437 U.S. at 595 (citation omitted). In other words, LPL's argument fails because it is error to assume that "if a process application implements a principle in some specific fashion, it automatically falls within the patentable subject matter of § 101." *Id*. at 593.[11]

---

[10] *See, e.g., Bancorp*, 771 F. Supp. 2d at 1067 ("The inventions in *Bilski*, *Benson*, and *Flook* arguably all addressed a need in the art and yet were determined to be drawn to abstract ideas and thus were unpatentable.").
[11] That the claims may be directed to generating mass marketing communications in a particular field, like finance, is also insufficient to render the abstract idea patentable. *In re Bilski*, 545 F.3d 943, 957 (Fed. Cir. 2008), *aff'd* 130 S. Ct. 3218 (2010) ("Pre-emption of all uses of a fundamental principle in all fields and pre-emption of all uses of the principle in only one field both indicate that the claim is not limited to a particular application of the principle.");

7

LPL also contravenes Supreme Court precedent in arguing that the "automated" steps and general purpose computer present in some claims satisfy Section 101. To the contrary, the Supreme Court has found claims drawn to an abstract idea unpatentable *even when they involve a computer*. Indeed, in both *Gottschalk v. Benson* and *Parker v. Flook*, the Supreme Court invalidated such claims. *Benson*, 409 U.S. at 71-72; *Flook*, 437 U.S. at 586. Merely including the phrase "computing system" or "automated" does not render abstract ideas patentable.[12]

In addition to disregarding Supreme Court precedent, LPL cherry picks (and misinterprets) recent Federal Circuit cases. Importantly, LPL *ignores* the recent *CyberSource Corp. v. Retail Decisions, Inc.* decision, which is immediately relevant here. Dkt. No. 52 at 9-13. The claims in *CyberSource* concerned a method and software for verifying credit card transactions over the Internet. Looking to the "underlying invention," the court found the claims so broad as to encompass any means of performing the stated goal of the claim. *CyberSource*, 2011 U.S. App. LEXIS 16871, at *10, *18, *22. Because the claims were not tied to a particular machine and could be performed by a human (in their mind or using a pen and paper), the court invalidated the claims. *Id.* at *1, *16. Similarly, LPL's claims concern developing automated customized communications for a marketing campaign. This idea can be performed in the human mind or with a pen and paper.[13] That a computer or software is recited in *some* claims, does not save the claims. *Id.* at *23.

---

*see, e.g., Flook*, 437 U.S. at 586 (finding unpatentable claims directed to calculation of an "alarm limit" though they did not "cover every conceivable application of the formula").

[12] In *Parker v. Flook*, the Court cautioned against such a "form over substance" approach to Section 101, which would allow any competent draftsman to avoid the statutory requirements of patentability. *Flook*, 437 U.S. at 590.

[13] *See, e.g.*, Dkt. No. 1, '938 Patent at 36:50-54, 37:33-44; 39:5-8 (showing steps performed by a salesperson, by direct mail, or by telephone). Despite LPL's argument that a printer is used to turn a "blank page" into a "customized communication" (Dkt. No. 84. at 14-15), such action is precisely within the capability of a human being using a pen and paper. Likewise, a human can perform the "automatic" steps of the claims. *See infra* note 17.

LPL relies heavily on Federal Circuit decisions—*Classen* and *Ultramercial*[14]—that are inapposite and distinguishable from the facts here. Dkt. No. 84 at 13-15, 28-29. The claims in *Classen* involved the immunization of a patient—a physical implementation of an abstract idea. Contrary to LPL's arguments, "automatically generating" a customized document is not a similar physical implementation. Formulating a customized communication involves no more than the ***manipulation of abstractions***—the application of one abstract concept, like demographic information, to a second abstract concept, a marketing scheme, to develop an automated customized marketing message. Such manipulations of abstract ideas are not patentable.[15]

The *Ultramercial* case is likewise irrelevant.[16] *Ultramercial* presented a unique case where its ***claims specifically recited*** a complicated multi-step process that required significant and complex computer programming. Those of LPL's claims that recite a computing system at all, by contrast, require at most basic database and word processing programs—nothing "specialized." The recitation of a general purpose computer (with basic computer programming) does not confer patentability. *Benson*, 409 U.S. at 71-72; *Flook*, 437 U.S. at 586, 596.

## IV. THE CLAIMS OF THE '938 AND '366 PATENTS FAIL THE MACHINE-OR-TRANSFORMATION TEST

LPL's sole argument that its claims satisfy the machine element of the machine-or-transformation test relies on its argument that the claims, including 266 method claims reciting ***no machine at all***, should be construed to cover a specially programmed computer.[17] However,

---

[14] *Classen Immunotherapies, Inc v. Biogen IDEC*, No. 2006-1634 & 2006-164, 2011 U.S. App. LEXIS 18126 (Fed. Cir. Aug. 31, 2011); *Ultramercial*, 2011 U.S. App. LEXIS 19048.
[15] *In re Bilski*, 545 F.3d at 963-64 ("Purported transformations or manipulations simply of public or private legal obligations or relationships, business risks, or other such abstractions cannot meet the test.").
[16] Also distinguishable is Magistrate Everingham's recent decision in *Innova Patent Licensing, LLC v. Alcatel-Lucent Holdings*, No. 2-10-cv-00251, slip op. (E.D. Tex. Sept. 22, 2011) (attached as Ex. A). There, the claims required computer programming to enable: scanning of messages; determination of context-awareness; and retrieval of context information from external locations. This is substantially greater programming than required here.
[17] The fact that several dependent claims explicitly allow steps of the claimed method to be performed manually by a salesperson demonstrates the abstract nature of the claims and shows that a machine is not required. *See* Dkt. No. 52

as discussed above, the claims recite, at best, a general purpose computer. That a claim may be performed using a general purpose computer fails to tie to the computer to the claim in a meaningful way. *In re Bilski*, 545 F.3d at 961 ("[T]he use of a specific machine … must impose meaningful limits on the claim's scope to impart patent eligibility.") (citation omitted).

LPL argues that the claims achieve a physical transformation because a piece of paper or an electronic document is transformed into a customized document. However, that a customized document may be physically created *after* it is "automatically generated" is insignificant post-solution activity and unpatentable. Allowing insignificant post-solution activity to render claims patentable would allow any "competent draftsman [to] attach some form of post-solution activity to almost any mathematical formula." *Flook*, 437 U.S. at 590. Further, as LPL argues, the thrust of its claims is automatically "generating" or "preparing" a customized message—formulating a customized product targeted to an individual. That the resultant message is ultimately put on paper is not central to the purpose of the claims and does not render the abstract idea patentable. Indeed, if a "transformation" were deemed to occur merely by putting ideas on a blank piece of paper, it would eviscerate the Supreme Court's rule against patenting abstract ideas.[18]

## V. CONCLUSION

The claims of the '938 and '366 Patents are drawn to the abstract idea of generating customized marketing communications that are not tied to a specific machine and do not require a physical transformation. Accordingly, Plaintiffs have failed to state a claim upon which relief can be granted and Liberty Mutual's Motion should be granted.

---

at 9. Although LPL argues that the "automatic[]" steps of its claims cannot be satisfied by a salesperson (Dkt. No. 84 at 22), LPL is wrong. A salesperson can "automatically generate" a reply by crafting it in their mind prior to recording it on paper. No claim language prohibits such performance of the claimed method.

[18] *See, e.g., In re Bilski*, 545 F.3d at 963 (finding claims directed to a hedging method did not transform an article); *Fort Props., Inc. v. Am. Master Lease*, LLC, 609 F. Supp. 2d 1052, 1056 (C.D. Cal. 2009) (holding that the printing of deedshares after an investment instrument was created was not a transformation, and noting that deedshares, like the marketing content at issue here, did not represent a physical object); *In re Ferguson*, 558 F.3d 1359, 1361 (Fed. Cir. 2009) (holding that claims directed to a "method of marketing a product" did not involve a transformation).

                                                    Respectfully submitted,

Dated: October 14, 2011            By: */s/ Jennifer Parker Ainsworth*
                                                Jennifer Parker Ainsworth
                                                Texas State Bar No. 00784720
                                                jainsworth@wilsonlawfirm.com
                                                WILSON, ROBERTSON & CORNELIUS
                                                909 ESE Loop 323, Suite 400
                                                P.O. Box 7339 [75711]
                                                Tyler, Texas 75701
                                                Telephone: (903) 509-5000
                                                Facsimile: (903) 509-5092

                                                James R. Myers
                                                Nicole M. Jantzi
                                                ROPES & GRAY LLP
                                                One Metro Center
                                                700 12th Street
                                                Washington, DC 20005
                                                Telephone:  (202)-508-4600
                                                Facsimile:  (202)-508-4650
                                                James.Myers@ropesgray.com
                                                Nicole.Jantzi@ropesgray.com


                                                Attorneys for Defendant,
                                                Liberty Mutual Insurance Company

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this motion was served on all counsel who have consented to electronic service, Local Rule CV-5(a)(3), on this the 14th day of October, 2011.

>  */s/ Jennifer P. Ainsworth*
>  Jennifer P. Ainsworth