**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| Phoenix Licensing, L.L.C., an Arizona limited liability company, and LPL Licensing, L.L.C., a Delaware limited liability company; | |
| Plaintiffs, | **CASE NO. 2:11-cv-285-TJW** |
| vs. | |
| Aetna Inc., a Pennsylvania corporation; Aetna Life Insurance Company,  a Connecticut corporation; Commerce Bancshares, Inc., a Delaware corporation; Commerce Bank, N.A., a national banking association; Cullen/Frost Bankers Inc., a Texas corporation; Frost National Bank, a national banking association; HSBC Finance Corporation,  a Delaware corporation; HSBC Bank USA, N.A.,  a national banking association; HSBC Bank Nevada, N.A.,  a national banking association; HSBC Card Services, Inc.,  a Delaware corporation; HSBC Technology & Services, Inc.; a Delaware corporation; HSBC Credit Center, Inc., a Delaware corporation; Liberty Mutual Insurance Company, a Massachusetts corporation; MetLife, Inc.,  a Delaware corporation; Metropolitan Life Insurance Company, a New York corporation; MetLife Bank N.A.,  a national banking association; Metropolitan Property and Casualty Insurance Company,  a Rhode Island corporation; Mutual of Omaha Insurance Company, a Nebraska corporation; United of Omaha Life Insurance Company, a Nebraska corporation; United World Life Insurance Company, a Nebraska corporation; Sovereign Bank, a federally chartered savings bank, UnitedHealth Group, Inc., a Minnesota corporation; United HealthCare Insurance Company, a Connecticut corporation; Golden Rule Insurance Company, an Illinois corporation; United Healthcare Services, Inc.,  a Minnesota corporation; a PacifiCare Health Systems LLC, a Delaware corporation; | **Jury Trial Demanded**<br><br>**Plaintiffs Phoenix Licensing and LPL Licensing's Sur-reply In Opposition to Liberty Mutual Insurance Company's Motion to Dismiss.** |
| Defendants. | |

## **Table of Contents**

I.      Liberty's Procedural Arguments...........................................................................................1

II.    Liberty's Substantive Arguments. ......................................................................................3

## Table of Authorities

**Cases**

*Artk. Game & Fish Comm'n v. United States*,
  637 F.3d 1366 (Fed. Cir. 2011).................................................................................................... 1
*Bilski v. Kappos*,
  130 S. Ct. 3218 (2010)......................................................................................................... 2, 3, 4
*Boeing N. Am., Inc. v. Roche*,
  298 F.3d 1274 (Fed. Cir. 2002)................................................................................................... 2
*CLS Bank Int'l v. Alice Corp. Pty, Ltd.*,
  768 F. Supp. 2d 221 (D.D.C. 2011) ............................................................................................ 7
*Cybersource Corp. v. Retail Decisions, Inc.*,
  No. 2009-1358, 2011 U.S. App. LEXIS 16871 (Fed. Cir. Aug. 16, 2011) ................................ 9
*Gonzalez v. Kay*,
  577 F.3d 600 (5th Cir. 2009) .................................................................................................... 1
*Impax Labs, Inc. v. Aventis Pharms. Inc.*,
  545 F.3d 1312 (Fed. Cir. 2008)................................................................................................... 4
*In re Bilski*,
  545 F.3d 943 (Fed. Cir. 2008)............................................................................................... 2, 10
*Nat'l Cable Television Ass'n v. Am. Cinema Editors, Inc.*,
  937 F.2d 1572 (Fed. Cir. 1991)................................................................................................... 2
*Parker v. Flook*,
  437 U.S. 584 (1978);.................................................................................................................... 2
*Prometheus Labs., Inc. v. Mayo Collaborative Servs*,
  628 F.3d 1347 (Fed. Cir. 2010)............................................................................................. 2, 10
*Sacco v. United States*,
  452 F.3d 1305 (Fed. Cir. 2006)................................................................................................... 2
*Ultramercial v. Hulu*,
  2011 U.S. App. LEXIS 19048 (Fed. Cir. Sept. 15, 2011) ................................................ *passim*

**Statutes**
35 U.S.C. §282.................................................................................................................... 1, 4, 5
35 U.S.C. §112............................................................................................................................. 6


**Rules**
EDTX Local Patent Rule 3.1 ........................................................................................................ 4
Rule 12(b)(6)................................................................................................................................. 1

This sur-reply addresses the main procedural and substantive arguments presented in Liberty's Reply.

## I.    Liberty's Procedural Arguments.

Liberty Argument 1:   *LPL fails to identify any authority supporting its assertion that because LPL's claim to relief is "plausible," the Complaint cannot be dismissed under 12(b)(6).*   Reply at 2-3.

Liberty is wrong.  LPL identified (a) undisputed black-letter law confirming that a complaint can only be dismissed under Rule 12(b)(6) when it fails to allege sufficient facts to render a claim "plausible," and (b) the statute establishing a patent's presumption of validity. Opp. at 2-3, quoting (a) *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009), and (b) 35 U.S.C. §282.

Liberty Argument 2:   *"[T]he Federal Circuit recently confirmed that patentability under Section 101 may be considered on a motion to dismiss."*   Reply at 3, citing *Ultramercial, LLC v. Hulu, LLC*, 2011 U.S. App. LEXIS 19048 at *4-5 (Fed. Cir. Sept. 15, 2011)).

Liberty is wrong.  If the Federal Circuit does not squarely address an issue, the Federal Circuit does not "confirm" anything with respect to such unaddressed issue: "We have consistently held that panel authority that does not address an issue is not binding as to the unaddressed issue." *Ark. Game & Fish Comm'n v. United States*, 637 F.3d 1366, 1378 (Fed. Cir. 2011).  In *Ultramercial*, the Federal Circuit "reverse[d] the district court's dismissal of the patent claims for lack of subject matter eligibility," finding the claims-at-issue patent-eligible. *Ultramercial*, 2011 U.S. App. LEXIS 19048 at *18-19.  In doing so, the parties did not argue (and, as a result, the Court did not discuss or address) the issue of whether it is even appropriate to address patent eligibility under Section 101 in the context of a 12(b)(6) motion to dismiss.  As

1

a result, *Ultramercial* is not "precedent on this point because the court did not address the issue." *Sacco v. United States*, 452 F.3d 1305, 1308 (Fed. Cir. 2006).[1]  Accordingly, Liberty's reliance on cases (such as *Ultramercial*) that do not even address whether "[p]atent-eligibility is a matter of law that can be decided on the pleadings" (Reply at 1, citing nothing) is flawed.

<u>Liberty Argument 3</u>:   *Claim construction is not appropriate in a Section 101 patent eligibility analysis "because claims must be considered as a whole."*  Reply at 3, citing *Bilski v. Kappos*, 130 S. Ct. 3218, 3230 (2010).

Liberty's argument is way off.

As set forth in LPL's opposition, a Section 101 analysis turns on whether "the <u>claimed invention</u> is outside the scope" of patentable subject matter.  Opp. at 3, quoting *Bilski*, 130 S. Ct. at 3223 (emphasis added).  When analyzing the "claimed invention," "the Court has made clear that it is inappropriate to determine the patent-eligibility of a <u>claim as a whole</u> based on whether selected limitations constitute patent-eligible subject matter."  *In re Bilski*, 545 F.3d 943, 958 (Fed. Cir. 2008) (emphasis added) (quoting *Parker v. Flook*, 437 U.S. 584, 594 (1978)).  Determining the patent-eligibility of a "claim as a whole" means that "the presence of mental steps [in a claim] does not detract from the patentability of [other] steps."  *Ultramercial*, 2011 U.S. App. LEXIS 19048 at *18, quoting *Prometheus Labs., Inc. v. Mayo Collaborative Servs. & Mayo Clinic Rochester*, 628 F.3d 1347, 1358 (Fed. Cir. 2010).

That the patent-eligibility of LPL's claims must be analyzed without ignoring any claimed steps does not mean (as Liberty asserts) that the Court need not construe LPL's claims.

---

[1]   *See also Nat'l Cable Television Ass'n v. Am. Cinema Editors, Inc.*, 937 F.2d 1572, 1581 (Fed. Cir. 1991) ("When an issue is not argued or is ignored in a decision, such decision is not precedent to be followed in a subsequent case in which the issue arises."); *Boeing N. Am., Inc. v. Roche*, 298 F.3d 1274, 1283 (Fed. Cir. 2002) ("[W]e are not bound by [a prior opinion] on the issue . . . since [that] issue was neither argued nor discussed in our opinion.")

Rather, these cases simply confirm that the Court must consider <u>all</u> claim language (not just "selected limitations" that may be purely mental) when evaluating each of LPL's 426 claims.

In *Ultramercial*, the Federal Circuit, holding that the claims-at-issue were patent-eligible, stated that under certain limited circumstance claim construction may not necessarily be required before addressing a Section 101 claim analysis. *Ultramercial*, 2011 U.S. App. LEXIS 19048 at *4-5. That LPL's claims must be evaluated in their entirety ("as a whole") in no way demonstrates that each of LPL's claims falls into the exception where claim construction is not required. And Liberty's argument – that claims do not need to be construed in a Section 101 analysis "because claims must be considered as a whole" – fails to distinguish the six cases presented in LPL's opposition (at 4-5) demonstrating when claims must be construed prior to a Section 101 analysis.

## II.    Liberty's Substantive Arguments.

<u>Liberty Argument 1</u>:    *"When viewed as a whole, LPL's claims relate to the abstract idea of improving marketing campaigns by providing automated customized communications or replies. This is plainly an abstract idea."*  Reply at 4.

Liberty argues that, in addition to not being required to construe LPL's claims, Liberty does not even need to address each of LPL's claims because the Court can simply look at the "subject matter as a whole." Reply at 3. Liberty makes this argument because, as noted in LPL's opposition (Opp. at 6), Liberty does not come close to addressing the scope of the "claimed invention" (*Bilski*, 130 S. Ct. at 3230) for each of LPL's 426 claims. Liberty's argument fails.

<u>*First*</u>, whether or not LPL's patents generally "relate" to improving marketing campaigns does not advance the analysis. Rather, Section 101 patent-eligibility turns on the "claimed invention" as set forth in the claim language, not what the "claims relate to." *Bilski*, 130 S. Ct. at

3

3223 ("a Section 101 analysis turns on whether 'the <u>claimed invention</u> is outside the scope' of patentable subject matter").

*Second*, Liberty's unsupported conclusion that LPL's patents "relate" to an abstract idea (without addressing the limitations of a single LPL claim) does not come close to the evidence and analysis required to invalidate LPL's claims. Liberty has the burden of proving, by clear and convincing evidence, that each of LPL's 426 claims is invalid. *See* 35 U.S.C. 282 ("Each claim of a patent… shall be presumed valid independently.") "[A] party challenging patent validity has the burden to prove its case with clear and convincing evidence." *Impax Labs, Inc. v. Aventis Pharms. Inc.*, 545 F.3d 1312, 1314 (Fed. Cir. 2008). Concluding that LPL's patents "relate to" a "plainly abstract idea" does not substitute for the requisite "clear and convincing" claim-by-claim analysis required to satisfy this statutory burden.

*Third*, Liberty suggests that its motion should not be subject to the statutory requirement of proving each LPL claim invalid because LPL's Complaint does not identify the claims LPL will assert at trial. According to Liberty, Liberty's failure to address each of LPL's claims is a "predictable result of a filing of a vague Complaint." Reply at 3, fn. 3. That LPL did not, in its Complaint, specifically identify the claims that it intends to assert but rather, consistent with the Local Rules, will identify the asserted claim in its Infringement Contentions (*see* Local Patent Rule 3.1), does not exempt Liberty from its statutory burden of demonstrating that each of LPL's claims is invalid under Section 101.

<u>Liberty Argument 2</u>: *The examples in LPL's analysis "do not impact all claims" – it "speaks volumes" that LPL addressed only two sample claims in detail. Reply at 5.*

Liberty implies that if some majority of LPL's claims are invalid under Section 101 (*e.g.*, 266 of the 426 claims are invalid), this motion should be granted. Reply at 2, fn. 1("A total of

4

266 claims of the '938 Patent include no arguable structure.").[2]  Liberty is wrong.

To invalidate LPL's patents under Section 101, Liberty must prove that every one of

LPL's 426 claims is invalid.  35 U.S.C. §282.  Even if one claim in each LPL patent is valid (2 of

the 426 claims, less than 1%), Liberty's motion must be denied.  What "speaks volumes" is that

Liberty still does not even acknowledge each of LPL's 426 claims, let alone attempt to prove that

each claim is invalid under Section 101.

Liberty Argument 3:  *The claims are invalid "even under the constructions advocated by LPL."*
                     Reply at 5.

After making this assertion, Liberty does not analyze LPL's claims under the

constructions advocated by LPL.  Rather than attempting to demonstrate that LPL's claims are

invalid under LPL's proposed constructions, Liberty simply asserts that LPL's claims

"impermissibly read[] limitations into the claims" and then presents arguments why Liberty does

not agree with LPL's construction.  Reply at 6.  While Liberty presents arguments why it

disagrees with LPL's constructions, Liberty does not attempt to demonstrate that LPL's claims

are invalid under LPL's constructions.  Reply at 6.  And Liberty does not provide any proposed

alternative constructions under which the claims would be invalid under Section 101.

Liberty Argument 4:  *"[T]here is no reasonable construction that can save the present claims
                      from their fate as unpatentable subject matter."*  Reply at 1.

To support this argument, Liberty would need to (a) present all reasonable constructions

for each element of each LPL claim, and (b) demonstrate that the claims are not patent-eligible

under all such constructions.  Liberty, however, does not even propose and address a single

---

[2]     *See also* Reply at 5 ("These 266 claims comprise over 85% of the '938 Patent's 312
claims and 62% of the potentially assertable claims in this lawsuit."); *id.* ("the majority of claims
of the patents-in-suit are not affected by these 'disputes.'").

possible construction for even one element of even one claim. Instead, Liberty simply asserts the general conclusion that LPL's patents "relate to improving marketing and advertising campaigns." Reply at 1. Liberty does not even initiate a process of demonstrating that there are no reasonable constructions under which the claims would not be patent-eligible.

<u>Liberty Argument 5</u>:   *"LPL asks this Court to import limitations into the claims" and "rewrite its claims to include these elements."*   Reply at 1-2; 4.

LPL is not asking the Court to improperly "import limitations into" or "rewrite" the claims. Rather, LPL's analysis follows the proper (undisputed) claim construction process. For example, as set forth in LPL's opening brief (Opp. at 7-8), 46 of LPL's claims are written in "means-plus-function" format. Because these claims are drafted in means-plus-function format, it is undisputed that these claim elements incorporate all of the "corresponding structure … described in the specification and equivalents thereof." 35 U.S.C. §112, ¶6. Accordingly, it is not improper but rather required to import the structure from the specification into these claims.

In LPL's opposition, LPL identified the specific structures found in Figure 21 that would likely be included as the "corresponding structure" for these means-plus-function claim elements including a "processor" that "accesses a database 2000" to implement "system software 2500" and the corresponding algorithm in the "automated reply modules." Figure 21; '938; *see* Opp. at 8; 24. Contrary to Liberty's assertion, importing these structural limitations from the patent specification into these claims is not improper but rather is exactly what is required. Liberty does not



Fig. 21

propose any alternative supporting structure for these means-plus-function elements because any potential alternatives would also demonstrate that LPL's claims are patent-eligible.

Liberty Argument 6:   *"[T]he claims recite, at best, a general purpose computer."*  Reply at 9-10.

Liberty asserts that the structure disclosed in Figure 21 of LPL's patents that corresponds to the function of certain mean-plus-function elements – "a 'processor' that 'accesses a database 2000" to implement 'system software 2500' and the corresponding algorithm in the 'automated reply modules" – is simply a "general purpose computer" that describes nothing more than the "basic functions performed by every computer" with "no special programming."  Reply at 7 (without any citation to any authority).  Liberty's conclusion, devoid of any analysis, is wrong.

A simple reference to a "computer," without more, constitutes a "general purpose computer."  *See*, generally Reply at 6.  If a computer is programmed to perform a specific function, however, a "general purpose computer" becomes a "special purpose computer."  *See Ultramercial,* 2011 U.S. App. LEXIS 19048 at *15 ("general purpose computer in effect becomes a special purpose computer once it is programmed to perform particular functions pursuant to instructions from program software.").

If LPL's patents only referred to a "processor," this "processor" would constitute a "general purposes computer."  It is undisputed, however, that the processor in LPL's patents is programmed to "access database 2000" (a particular function) and through system software 2500 (instructions from program software) implement the "automated reply module" (a particular function).  *See also CLS Bank Int'l v. Alice Corp. Pty, Ltd.*, 768 F. Supp. 2d 221, 237 (D.D.C. 2011) ("[A] computer that has been specifically programmed to perform the steps of a method may no longer be considered a general purpose computer, but instead, a particular machine.")

The (a) processor, that (b) access database 2000, and (c) through system software 2500, (d) implements the "automated reply module" does not merely include the phrase "computing system" or "automated."  Reply at 8.  Contrary to Liberty's unsupported conclusion, not "every computer" (*e.g.*, this Court's computer) is a (a) processor, that (b) access a database, to (c) implement the system software of (d) an automated reply module.

<u>Liberty Argument 7</u>:   *Ultramercial is a "unique case" that is "irrelevant" because it involves a (1) "multi-step process" and (2) "substantially greater programming than required here."*  Reply at 9 and fn. 16.

In LPL's opposition, LPL provided a detailed analysis how each factor that the Federal Circuit in *Ultramercial* considered in finding claims patent-eligible applied directly to LPL's claims, quoting both the Federal Circuit's language and the actual claim language.  Opp. at 28-29.  Liberty ignores this entire analysis.  Instead Liberty manufactures the two artificial "distinctions" identified above (not found in *Ultramercial*), both of which fail.

*First*, it is undisputed that each LPL claim involves a "multi-step process."  *See e.g.*, '938 claim 181 claiming at least 6 steps ([a] selecting step, [b] automatically preparing step, [c] communicating step, [d] receiving responses step, [e] automatically generating step, and [f] communicating step.  Accordingly, if the claims in *Ultramercial* were patentable because they involved multiple steps, each LPL claim is patentable because each also involves multiple steps.

*Second*, Liberty's "greater programming" argument fails at every level.

- <u>Level 1</u>:  Liberty cannot point to any language in *Ultramercial* (or from any other authority) suggesting that patent-eligibility depends on a particular threshold level of programming – *e.g.*, "basic computer programming" versus "complex computer programming."  Reply at 9.

- <u>Level 2</u>:  If patent-eligibility were dependent on a particular threshold level of

programming, Liberty does not (and cannot) identify what that threshold level is.

- <u>Level 3</u>:  If there was such a threshold level, Liberty's unsupported conclusion (without any analysis) – that the *Ultramercial* claims met the threshold of "complex computer programming" but the "system software 2500" and the corresponding algorithm in the "automated reply module" in LPL's patents is "basic computer programming" and does not meet this threshold – does not come close to the standard required to invalidate LPL's claims.

<u>Liberty Argument 8</u>:  *LPL ignores CyberSource because no claim language prohibits a salesperson from performing all elements of all LPL claims that can all be "performed in the human mind or by a human using a pen and paper, like here."*  Reply at 9 fn. 17, 8 fn. 13,  and 2, 8, and fn. 13, quoting *CyberSource Corp. v. Retail Decisions, Inc.*, No. 2009-1358, 2011 U.S. App. LEXIS 16871 (Fed. Cir. Aug. 16, 2011).[3]

Again, Liberty completely ignores the claim limitations that specifically exclude LPL's claimed steps from being performed (a) by a salesperson, or (b) by "a human using a pen and paper."  *See, e.g.*, '366, claim 60; claim 114 (emphasis added) ("said computing system can automatically and <u>without human intervention</u> generate successive customer communications.");  Opp. at 22-23.

<u>Liberty Argument 9</u>:  *That "a customized document may be physically created after it is "automatically generated" is "insignificant post-solution activity and unpatentable" under the transformation test.*

*First*, Liberty's argument jumbles up the legal requirements for the (a) machine, and (b) transformation tests.  The machine test requires that a claim (1) must be "tied to a particular

---

[3]   Contrary to Liberty's assertion, Liberty did not address the Federal Circuit *CyberSource* opinion in its motion at pages 9-13.  Reply at 8.  As a result, LPL did not "ignore" the non-existent analysis of *CyberSource* in Liberty's motion.

machine" that (2) "must not merely be insignificant extra-solution activity."  *In re Bilski*, 545 F.3d at 954, 961-962 (Fed. Cir. 2008).  The transformation test, however, has no such "extra-solution activity" or "post-solution activity" component.  Rather, claims "satisfy the transformation prong of the machine-or-transformation test [if] they [1] 'transform an article into a different state or thing,' and [2] this transformation is 'central to the purpose of the claimed process.'"  *Prometheus Labs.*, 628 F.3d at 1355 (quoting *In re Bilski*, 545 F.3d at 962).

<u>*Second*</u>, as set forth in LPL's opposition, LPL's claims satisfy these two limitations.  *See* Opp. at 25-27.

| Date: November 7, 2011 | Respectfully Submitted, |
| --- | --- |
| | /s/Richard E. Lyon            . |
| | Gregory Scott Dovel |
| | CA State Bar No. 135387 |
| | E-mail: greg@dovellaw.com |
| | Sean A. Luner |
| | CA State Bar No. 165443 |
| | E-mail: sean@dovellaw.com |
| | Richard E. Lyon |
| | CA State Bar No. 229288 |
| | Email: rick@dovellaw.com |
| | Dovel & Luner, LLP |
| | 201 Santa Monica Blvd., Suite 600 |
| | Santa Monica, CA 90401 |
| | Telephone: (310) 656-7066 |
| | Facsimile: (310) 656-7069 |
| | |
| | S. Calvin Capshaw |
| | State Bar No. 03783900 |
| | Elizabeth L. DeRieux |
| | State Bar No. 05770585 |
| | Capshaw DeRieux, LLP |
| | 114 E. Commerce Ave. |
| | Gladewater, Texas 75647 |
| | Telephone:  (903) 236-9800 |
| | Facsimile: (903) 236-8787 |
| | E-mail: ccapshaw@mailbmc.com |
| | E-mail: ederieux@mailbmc.com |
| | |
| | ATTORNEYS FOR PLAINTIFFS |
| | PHOENIX LICENSING, L.L.C. and |
| | LPL LICENSING, L.L.C. |

11

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 7th day of November, 2011, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by electronic mail, facsimile transmission and/or first class mail on this same date.

/s/ Richard E. Lyon