IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| Phoenix Licensing, L.L.C., et al. | |
| v. | CASE NO. 2:10-cv-064-JRG-RSP |
| ING Bank FSB et al. | |
| Phoenix Licensing, L.L.C., et al. | |
| v. | CASE NO. 2:10-cv-212-JRG-RSP |
| Aegon USA, Inc. et al. | |
| Phoenix Licensing, L.L.C., et al. | |
| v. | CASE NO. 2:11-cv-285-JRG-RSP |
| Aetna Inc., et al. | |
| Phoenix Licensing, L.L.C., et al. | |
| v. | CASE NO. 2:11-cv-286-MHS-RSP |
| Alliance Data Systems Corporation et al. | |
| Phoenix Licensing, L.L.C., et al. | |
| v. | CASE NO. 2:12-cv-00208-JRG-RSP CONSOLIDATED |
| Nationwide Mutual Insurance Company et al. | |

**Defendants' Motion for Summary Judgment of Invalidity Under 35 U.S.C. § 112, ¶ 2**

## <u>TABLE OF EXHIBITS</u>

**Exhibit A:**   U.S. Patent No. 5,9874,434 ('434 Patent)

**Exhibit B:**   U.S. Patent No. 6,999,938 ('938 Patent)

**Exhibit C:**   U.S. Patent No. 7,890,366 ('366 Patent)

**Exhibit D:**   Jan. 8, 1997 Preliminary Amendment in U.S. Patent
Application No. 08/661,004 ('434 Patent)

**Exhibit E:**   Feb. 21, 2006 Amendment and Response in Reexamination
Control No. 90/007,498 ('434 Patent)

**Exhibit F:**   Joint Claim Construction and Prehearing Statement, No.
2:11-cv-0286-MHS-RSP, Doc. No. 373 (February 12, 2013)

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abbot Labs. v. Syntron Bioresearch, Inc.,*
  334 F.3d 1343 (Fed. Cir. 2003)...........................................................................................6

*Allen Eng'g Corp. v. Bartell Indus., Inc.*,
  299 F.3d 1336 (Fed. Cir. 2002).....................................................................................4, 5, 7

*Athletic Alternatives v. Prince Mfg.*,
  73 F.3d 1573 (Fed. Cir. 1996)...........................................................................................5

*CCS Fitness, Inc. v. Brunswick Corp.*,
  288 F.3d 1359 (Fed. Cir. 2002)......................................................................................5, 13

*Celetox Corp. v. Catrett*,
  477 U.S. 317 (1986)...........................................................................................................4

*Chef Am., Inc. v. Lamb-Weston, Inc.,*
  358 F.3d 1371 (Fed. Cir. 2004)..................................................................................7, 10, 12

*Datamize, LLC v. Plumtree Software, Inc.,*
  417 F.3d 1342 (Fed. Cir. 2005).............................................................................5, 6, 8, 9, 11

*Genentech, Inc. v. Wellcom Found. Ltd.*,
  29 F.3d 1555 (Fed. Cir. 1994).......................................................................................5, 13

*Halliburton Energy Servs., Inc. v. M-I, LLC,*
  514 F.3d 1244 (Fed. Cir. 2008)....................................................................................10, 11

*In re Hammack*,
  427 F.2d 1384 (CCPA 1970) ............................................................................................7

*Honeywell Int'l, Inc. v. Int'l Trade Comm'n*,
  341 F.3d 1332 (Fed. Cir. 2003).......................................................................................4, 5

*Input/Output, Inc. v. Sercel, Inc.,*
  2008 WL 5427982 (E.D. Tex. Apr. 28, 2008).....................................................................11

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*,
  430 F.3d 1377 (Fed. Cir. 2005)..................................................................................7, 14, 15

*Juxtacomm-Texas Software, LLC v. Axway, Inc.*,
  No. 6:10-cv-011-LED, Doc. No. 1079, Order granting Motion for Summary
  Judgment of Invalidity Under 35 U.S. § 112, ¶ 2 (E.D. Tex. July 5, 2012) ........................5, 7

*Martek Biosciences Corp. v. Nutrinova, Inc.*,
   579 F.3d 1363 (Fed. Cir. 2009)..................................................................................5, 13

*MicroStrategy Inc. v. Business Objects Americas*,
   238 Fed. Appx. 605 (Fed. Cir. 2007) .........................................................................9

*Pause Tech., LLC v. TiVo, Inc.*,
   419 F.3d 1326 (Fed. Cir. 2005)..................................................................................10

*Ragas v. Tenn. Gas Pipeline Co.*,
   136 F.3d 455 (5th Cir. 1988) .....................................................................................4

*S3 Inc. v. nVIDIA Corp.*,
   259 F.3d 1364 (Fed. Cir. 2001)..................................................................................5

*Solomon v. Kimberly-Clark Corp.*,
   216 F.3d 1372 (Fed. Cir. 2000)..................................................................................4

## RULES AND STATUTES

35 U.S.C. § 112, ¶ 2 ........................................................................1, 4, 5, 10, 14, 15

FED. R. CIV. P. 56(c) .................................................................................................4

## TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     OVERVIEW OF THE '434 PATENT ................................................................. 1

III.    OVERVIEW OF THE '938 PATENT ................................................................. 2

IV.     OVERVIEW OF THE '366 PATENT ................................................................. 3

V.      LEGAL STANDARDS ........................................................................................ 4

       a.    Summary Judgment ................................................................................... 4

       b.    Indefiniteness Under 35 U.S.C. 112, ¶ 2 ................................................. 4

            1.    *Words of degree without objective anchor render claims indefinite* ............... 5

            2.    *Logical inconsistency or contradiction renders claims indefinite* .................... 7

            3.    *Claims that recite two statutory classes of invention are indefinite* .................. 7

VI.     ARGUMENT ........................................................................................................ 8

       a.    All Claims of the '434 Patent Are Indefinite Because They Require a Purely Subjective Standard of "Appropriate[ness]" ........................................................... 8

            1.    *The '434 Patent fails to provide any standard of "appropriate[ness]"* ............. 8

            2.    *"Appropriate" cannot be read out of the claims* ............................................... 10

            3.    *The '434 Patent fails to inform the public of the bounds of the claims* .......... 11

       b.    All Claims of the '938 Patent Are Insolubly Ambiguous because Their Terms Are Logically Inconsistent ....................................................................................... 11

            1.    *The claims require replies to be "automatically" generated* .......................... 12

            2.    *But "reply" is unambiguously defined as being "generated by a user"* ......... 13

            3.    *Replies cannot be "automatically" generated and "generated by a user"* ...... 13

       c.    Claim 113 of the '366 Patent is Indefinite Because it Combines Two Statutory Classes of Invention—a System and a Method of Using the System ..................... 14

VII.    CONCLUSION AND REQUEST FOR RELIEF ............................................ 15

## I.       INTRODUCTION

Every independent claim of U.S. Patent No. 5,987,434 ("the '434 patent") recites selecting a subset of products "***appropriate***" for each client.  But the '434 patent fails to provide an objective anchor against which a potentially infringing process may be compared to determine whether it meets the "appropriate" limitation.  Ex. A.  All claims of the '434 patent are therefore invalid for failing to comply with the definiteness requirement of 35 U.S.C. § 112, ¶ 2.

Every independent claim of U.S. Patent No. 6,999,938 ("the '938 Patent") recites "***automatically generating*** . . . replies." Ex. B[1].  But the '938 Patent requires every "reply" to be "***generated by a user***." Ex. B at 8:4-6[2] (emphasis added).  A reply cannot be both "automatically generat[ed]" and "generated by a user."   These concepts are logically inconsistent and inescapably conflict, rendering the claims insolubly ambiguous and therefore indefinite.

Claim 113 of U.S. Patent No. 7,890,366 ("the '366 patent") improperly recites two different statutory classes of invention, namely, a system for preparing personalized communication documents that requires structural components, such as a computing system and electronic databases, and also a method of using the system to prepare and generate successive personalized communication documents having particular features.  Ex. C.  Claims that recite both a system and a method of using the system, such as claim 113, are indefinite because they fail to apprise the public of when they are infringed (i.e., by creating the system or by using it).

## II.      OVERVIEW OF THE '434 PATENT

The '434 Patent is generally directed to a process to automatically select and present financial products to clients for marketing purposes.  Claim 2 is representative of the claim language at issue:

---

[1] Claims 1, 41, 52, 101, 141, 266, 268, 308-311 recite "automatically generating one or more replies."
   Claims 184, 226, and 312 recite "automatically generating replies."
[2] Refers to column:line.

> A method for using client information about clients comprising a plurality of client records to automatically select and present financial products **appropriate** for the clients, the method comprising: . . .
>
> using a central processing unit in communication with the storage medium to <u>select a subset of the financial products for each of the clients **appropriate** for that client</u> using the client information, the financial products information, and the decision criteria . . . .

Ex. A at claim 2 (emphasis added).  Every independent claim of the '434 Patent includes the term "appropriate" in both the preamble and in the body of the claims.

## III.    OVERVIEW OF THE '938 PATENT

The '938 Patent is generally directed to an "[a]utomated reply generation direct marketing system."  The '938 Patent is a continuation-in-part of U.S. Patent No. 6,076,072 (the '072 Patent)), which is a continuation-in-part of the '434 Patent.  The '938 Patent adds a section on automatically generating replies that is not in the '434 and '072 Patents, neither of which discusses "reply" or "replies."  *See* Ex. B at 30:55-34:40; FIGS. 18-21.  This new section states that "[t]he invention provides a system that includes *software* that *automatically generates* a reply to a response received from clients . . . ."  Ex. B at 30:56-58 (emphasis added).  For example, "the internet response 1850 is transferred in real time to the system 1900 which *automatically generates* an appropriate reply."  Ex. B at 33:66-34:1 (emphasis added).

The '938 Patent recognizes the difference between a task performed (a) "automatically" *by* a device, <u>or</u> (b) "manually" *by* a user. Ex. B at 16:5-30 ("data may be entered manually or automatically" into the computer system); 8:63-67 ("Keyboard 16 may be any modern keyboard which . . . comprises a means for the system user to selectively input information . . . where *manual* input is called for." (emphasis added));[3] 16:5-30 (automatically inputting information *by* a scanner).  The specification further distinguishes "automatically" from "semi-automatically,"

---

[3] *See also* '434 Patent at 8:9-20 and FIG. 4.

implying that even "semi-automatically" falls short of what the patentee meant to include in "automatically."  Ex. B at 16:24-33[4] ("task of automatically or semi-automatically sending").

Despite noting that a user may vary the format of system-generated communications, the '938 Patent fails to include examples of a user generating a reply.  *See, e.g.*, Ex. B at 24:57-60 ("output module allows the system user to define a particularized communication **format** for classes of customers" (emphasis added)) and 28:4-8 ("Through designation by the system user in interaction with the system, the output module creates the **format** to be used . . . ." (emphasis added)).  Nevertheless, the specification unambiguously defines the term "reply" as requiring user generation:  "'[r]eply' as used herein means a responsive communication **generated by a user** of the system of the invention that responds to a 'response' from a client."  Ex. B at 8:4-6 (emphasis added).  The patent thus expressly requires that each "reply" be "generated by a user," while each claim expressly requires that each "reply" be "automatically generated."

## IV.    OVERVIEW OF THE '366 PATENT

The claims of the '366 Patent are directed to the automatic preparation of personalized communication documents and the generation of successive personalized communication documents with different personalized content.   Claim 113 recites both a system having structural components that prepare and generate the personalized communication documents and a method of using the system to do so.  The relevant portions of claim 113 are presented below:

> 113.   A **system** for preparing personalized communication documents for a plurality of consumer entities comprising:
>
>> **a computing system**;
>>
>> **one or more electronic databases** *coupled to* the *computing system;*
>>
>> **one or more software routines** **executing** on the computing system which are adapted to:
>>
>>> a) provide financial product and/or financial service content . . .;

---

[4] *See also* '434 Patent at 8:27-32.

b) ***automatically prepare*** a personalized communication . . .;

c) ***generate successive*** personalize communication documents . . . .

Ex. C at claim 113 (emphasis added).  Specifically, claim 113 recites a "system for preparing personalized communication documents" that includes "a computing system" and "one or more electronic databases coupled to the computing system," as well as a method of using the system that requires "one or more software routines <u>executing</u> on the computer system."

## V.     LEGAL STANDARDS

### a.        Summary Judgment

Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *Celetox Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986); *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1988).  Despite the presumption of validity and clear-and-convincing evidence requirement, "whether a claim recites the subject matter which that applicant regards as his invention and is sufficiently definite . . . is a legal conclusion."  *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1344 (Fed. Cir. 2002) (citation omitted).  The issue is therefore appropriate for resolution on summary judgment.  *Honeywell Int'l, Inc. v. Int'l Trade Comm'n*, 341 F.3d 1332 (Fed. Cir. 2003) (affirming ITC's summary determination of indefiniteness).

### b.        Indefiniteness Under 35 U.S.C. 112, ¶ 2

The second paragraph of 35 U.S.C. § 112 requires that "[t]he specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."  Section 112, ¶ 2 has two requirements: "first, [the claim] must set forth what the applicant regards as his invention and second, it must do so with sufficient particularity and distinctness, i.e., the claim must be sufficiently definite."  *Allen Eng'g*, 299 F.3d at 1348 (internal quotes omitted) (quoting *Solomon v. Kimberly-Clark Corp.*,

216 F.3d 1372, 1377 (Fed. Cir. 2000)).   "A claim is invalid under the first prong of 35 U.S.C. § 112, ¶ 2, when one of skill in the relevant art, reading the specification would not understand the invention set forth in a claim is what the patentee regarded as his invention."  *Juxtacomm-Texas Software, LLC v. Axway, Inc.*, No. 6:10-cv-011-LED, Doc. No. 1079, Order granting summary judgment of invalidity under 35 U.S. § 112, ¶ 2, *6 (E.D. Tex. July 5, 2012) (citing *Allen Eng'g*, 299 F.3d at 1349).  A claim is presumed valid and "is indefinite only if the 'claim is insolubly ambiguous, and no narrowing construction can properly be adopted.'"  *Honeywell*, 341 F.3d at 1338-39 (citing *S3 Inc. v. nVIDIA Corp.*, 259 F.3d 1364, 1371-1372 (Fed. Cir. 2001)).

"When a patentee explicitly defines a claim term in the [] specification, the patentee's definition controls."  *Martek Biosciences Corp. v. Nutrinova, Inc.*, 579 F.3d 1363, 1380 (Fed. Cir. 2009); *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002).  If the specification give a term two definitions, the claims' public notice function demands adoption of the narrower one.  *Athletic Alternatives v. Prince Mfg.*, 73 F.3d 1573, 1581 (Fed. Cir. 1996) (adopting broader definition "would undermine the fair notice function"); *Genentech, Inc. v. Wellcom Found. Ltd.*, 29 F.3d 1555, 1563-64 (Fed. Cir. 1994) (adopting narrowest definition most likely relied on by the USPTO).  "When a word of degree is used, the district court must determine whether the patent's specification provides some standard for measuring that degree."  *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1351 (Fed. Cir. 2005).

### 1.      *Words of degree without objective anchor render claims indefinite*

"When a word of degree is used [in a claim,] the district court must determine whether the patent's specification provides some standard for measuring that degree."  *Datamize,* 417 F.3d at 1351 (citation omitted).  Further, definiteness "requires an objective anchor."  *Id.* at 1350.

In *Datamize,* the Federal Circuit affirmed summary judgment of invalidity under Section 112, ¶ 2 because the claim term "aesthetically pleasing" was subjective.  The court held that the claims, specification, and prosecution history "offered no objective definition identifying a standard for determining when an interface screen is 'aesthetically pleasing.'"  315 F.3d at 1350.  The court reasoned that "[i]n the absence of a workable objective standard, 'aesthetically pleasing' does not just include a subjective element, it is completely dependent on a person's subjective opinion."  *Id.*  The court thus held all claims indefinite because the sole independent claim included the indefinite phrase "aesthetically pleasing."  *Id.*

Notably, the *Datamize* court held that the claim term "aesthetically pleasing" was not amenable to construction, even though it could be defined using extrinsic evidence.  *Id.* at 1348 ("the ordinary meaning of 'aesthetically pleasing' includes 'having beauty that gives pleasure or enjoyment' or, in other words, 'beautiful'").  The court held that the proper issue is whether a term can be objectively defined in the context of the claims.  *See id.* (citing *Abbot Labs. v. Syntron Bioresearch, Inc.,* 334 F.3d 1343, 1351 (Fed. Cir. 2003)).  And the intrinsic evidence:

> [did] not suggest or provide any meaningful definition for the phrase 'aesthetically pleasing' itself.  Merely understanding that 'aesthetically pleasing' relates to the look and feel of interface screens, or more specifically to the aggregate layout of elements in interface screens, fails to provide one of ordinary skill in the art with any way to determine whether an interface screed is 'aesthetically pleasing.'

*Id.* at 1349.  "A purely subjective construction . . . would not notify the public of the patentee's right to exclude since the meaning of the claim language would depend on the unpredictable vagaries of any one person's opinion . . . . While beauty is in the eye of the beholder, a claim term, to be definite, ***requires an objective anchor***."  *Id.* at 1350 (emphasis added).

### 2.     *Logical inconsistency or contradiction renders claims indefinite*

A claim is indefinite if its terms are logically inconsistent or contradictory.  *Allen Eng'g*,

299 F.3d at 1349 (claims indefinite that mistakenly recited "perpendicular" instead of "parallel"

where the specification taught parallel); *Juxtacomm-Texas Software*, No. 6:10-cv-011-LED,

Order at *8 ("logical inconsistency or contradiction between the claims and the specification"—

claims indefinite that required data transformation in systems interface where the specification

did not teach systems interface with data transformation).  The Court "may not redraft claims,

whether to make them operable or to sustain their validity," even to correct an obvious mistake.

*Chef Am., Inc. v. Lamb-Weston, Inc.,* 358 F.3d 1371, 1374 (Fed. Cir. 2004) (citations omitted);

*Allen Eng'g*, 299 F.3d at 1349 (quoting *In re Hammack*, 427 F.2d 1384, 1388 n. 5 (CCPA 1970))

("it is of no moment that the contradiction is obvious: semantic indefiniteness of claims 'is not

rendered unobjectionable merely because it could have been corrected.'").

### 3.     *Claims that recite two statutory classes of invention are indefinite*

As explained in *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377 (Fed. Cir.

2005), a hybrid claim that combines two different statutory classes of invention, such as a system

and a method of using the system, is invalid under 35 U.S.C. § 112, ¶ 2, because "it does not

apprise a person of ordinary skill in the art of its scope . . . ." *Id.* at 1384.  Specifically, for such

claims, it is unclear whether infringement occurs from creating the system or whether actual use

of the system is required. *Id.* ("[I]t is unclear whether infringement of claim 25 occurs when one

creates a system that allows that user to change the predicted transaction information or accept

the displayed transaction, or whether infringement occurs when the user actually uses the input

means to change transaction information or uses the input means to accept at displayed

transaction.").  Such claims are therefore indefinite. *Id.*

## VI.     ARGUMENT

### a.     All Claims of the '434 Patent Are Indefinite Because They Require a Purely Subjective Standard of "Appropriate[ness]"

"Appropriate" is a purely subjective word of degree, but the '434 Patent fails to provide any "objective anchor" against which a potentially infringing process can be compared.  *See Datamize*, 417 F.3d at 1350.  Neither the claim language nor the specification offers any way to distinguish between "appropriate" products selected using the decision criteria and presumably "inappropriate" products selected using the decision criteria.  It is thus impossible to distinguish products that are "appropriate" for a client from those that are not.  The term "appropriate" is therefore insolubly ambiguous, and renders every claim of the '434 Patent invalid as indefinite.

### 1.     *The '434 Patent fails to provide any standard of "appropriate[ness]"*

The term "appropriate" is a term that, standing alone, provides no objective standard for measuring or determining infringement.  Thus, the Court must look to the intrinsic evidence for an objective standard.  *Datamize,* 315 F.3d at 1349.  In this case, none is provided.

The language of the '434 Patent claims does not suggest any meaningful standard for "appropriate" and thus fails to guide any determination of its scope.  The claims merely state that "appropriate" products are selected, without providing any criteria for appropriateness.

Similarly, the specification of the '434 Patent fails to provide any objective standard for determining the scope of what is "appropriate" in the context of the claims.  The disclosure related to the term "appropriate" in the specification is sparse and ambiguous:

- "select and/or recommend products ***most appropriate*** for the individual needs of each prospective client"  (Ex. A at 4:6-7 (emphasis added));
- "select the plan or plans and the financial product or products which ***best meet*** a specified set of decision criteria" (Ex. A at 9:45-46 (emphasis added));
- "select from among those plans and products the ones ***most suitable*** for the client based on the decision making criteria" (Ex. A at 9:55-57 (emphasis added));

- "Virtual Agent™ module draws from the available product pool the **most appropriate** product to fit each plan selected as a candidate."  (Ex. A at 12:23-25 (emphasis added)).

- "The first methodology considers each of the various factors which may be used to evaluate the **attractiveness** of that product for the particular client."  (Ex. A at 12:42-45 (emphasis added));

- "This step involves determining what the individual client is **most likely to buy** . . . ." (Ex. A at 12:58-60 (emphasis added)).

Thus, the specification merely uses "appropriate" in conjunction with equally subjective language, nowhere providing an objective standard or explanation so that one of ordinary skill in the art could use to objectively determine the bounds of "appropriate[ness]" in the claims.[5]

Nor does the prosecution history of the '434 Patent provide any help.  *See Datamize,* 417 F.3d at 1353 ("We must also analyze the prosecution history to determine whether it provides any reasonable construction of 'aesthetically pleasing.'").  "Appropriate" was not included in the originally-filed claims, which read "using the client information, the financial products information, the ancillary information, and the decision criteria to select a subset of the financial products."  Ex. D, Jan. 8, 1997 Prelim. Amend. at 5.  Instead, the Applicant added "appropriate" by preliminary amendment: "using the client information, the financial products information, [the ancillary information,] and the decision criteria to select a subset of the financial products for each of the clients ***appropriate*** for that client."  *Id.* (emphasis added).  This confirms the importance of "appropriate," but offers nothing in the way of objective criteria.

The reexamination history of the '434 Patent also fails to provide any objective guidance. During the first reexamination, the patentee noted that "[a]n automated process/apparatus that selects among financial products based on information about them stored in the system provides

---

[5] *See MicroStrategy Inc. v. Business Objects Americas,* 238 Fed. Appx. 605 (Fed. Cir. 2007) (nonprecedential) (The claim called for a "client system using and transmitting the retrieved information."  The court held that "without some information in the patent or its prosecution history about the way in which the retrieved information is being used, or for what purpose it is being used, we are unable to discern what that meaning is.").

significant advantages for mass marketing applications, because it improves the chances that the selected subset of financial products will be 'appropriate' for a particular client."  Ex. E, Feb. 21, 2006 Amend. and Resp. to Office Action at 40.   Thus, the patentee again highlighted the importance of the "appropriate[ness]" limitation, but provided no objective standard to distinguish products that ***are*** appropriate for a given client from those that ***are not*** appropriate.

As in *Datamize*, dictionaries define "appropriate" outside the context of the claims.  But the '434 Patent fails to provide a standard for comparing *any* definition of "appropriate" to products available to client.  *Halliburton Energy Servs., Inc. v. M-I, LLC,* 514 F.3d 1244, 1251 (Fed. Cir. 2008) (holding claims indefinite—"[e]ven if a claim term's definition can be reduced to words, the claim is still indefinite if a person of ordinary skill in the art cannot translate the definition into meaningfully precise claim scope.").  Here, as with "aesthetically pleasing" in *Datamize*, the intrinsic record's lack of guidance on whether a product may be "appropriate" for a given client hangs infringement solely on the subjective view of any given reader.  As a result, "appropriate" is not amenable to construction and is fatally indefinite under Section 112, ¶ 2.

### 2.        *"Appropriate" cannot be read out of the claims*

Plaintiffs may argue that "appropriate" products are simply those that are chosen using "decision criteria."  But such a construction would effectively and improperly rewrite the claims: "select a subset of the financial products for each of the clients ~~appropriate for that client~~ using the . . . ."  *See Chef. Am.,* 358 F.3d at 1374 (citation omitted) ("courts may not redraft claims").

It is firmly established that every claim term should be given a meaning where possible.  *See Pause Tech., LLC v. TiVo, Inc.,* 419 F.3d 1326, 1334 (Fed. Cir. 2005).  Thus, "appropriate" must have some meaning in the context of the claims.  Indeed, "appropriate" must mean something more than whatever the decision criteria picks, because the "appropriate" limitation

and the selection limitation are distinct.  Yet the claims, specification, and prosecution history fail to provide any objective anchor of "appropriate[ness]," and thus confirm that it is indefinite.

### 3.      The '434 Patent fails to inform the public of the bounds of the claims

The '434 Patent impermissibly leaves the public to guess at the limits of "appropriate." *Halliburton Energy Servs.,* 514 F.3d at 1249 ("[T]he patent statute requires that the scope of the claims be sufficiently definite to inform the public of the bounds of the protected invention . . . . Otherwise, competitors cannot avoid infringement, defeating the public notice function of patent claims."); *Datamize,* 417 F.3d at 1347 ("[T]he purpose of the definiteness requirement is to ensure that the claims delineate the scope of the invention using language that adequately notifies the public of the patentee's right to exclude.").  This Court has explained the purpose of the definiteness requirement as "ensur[ing] that the claims are written in such a way that they give notice to the public of the extent of the legal protection afforded by the patent, so that interested members of the public . . . can determine whether or not they infringe."  *Input/Output, Inc. v. Sercel, Inc.,* 2008 WL 5427982, *25 (E.D. Tex. Apr. 28, 2008).  Here, members of the public, and those of ordinary skill in the art, cannot possibly determine the metes and bounds of the claims, as neither the claim language nor the specification offers any objective standard for discerning which products are "appropriate" for a given client and which are inappropriate.

### b.      All Claims of the '938 Patent Are Insolubly Ambiguous because Their Terms Are Logically Inconsistent

As a matter of common sense, and as confirmed by the '938 Patent, a communication cannot be both automatically generated <u>and</u> generated by a user.  But the plain language of the '938 Patent's claims and specification require just that: replies must be both automatically generated and generated by a user.  This logical conflict renders the claims insolubly ambiguous.

### 1.     The claims require replies to be "automatically" generated

The claims "mean exactly what they say."  *Chef Am.*, 358 F.3d at 1373 ("These are ordinary, simple English words whose meaning is clear and unquestionable. There is no indication that their use in this particular conjunction changes their meaning.").  Replies cannot be "automatically generat[ed]" unless generated *by* a device.   The phrase "***automatically*** generating" was required by the USPTO to gain allowance.  *See* Ex. F, Notice of Allowance and Examiner's Amendment mailed August 4, 2005.  Plaintiffs concede that "automatically" requires a device.  *See* Ex. F, Joint Claim Construction and Prehearing Statement, No. 2:11-cv-0286-MHS-RSP, Doc. No. 373, at Ex. 1 *1-2[6] (February 12, 2013).  Further, the '938 Patent itself recognizes the difference between a task that is performed (a) "automatically" **by** *a device*, or (b) "manually" **by** *a user* of a device.   Ex. B at 16:5-30 ("data may be entered *manually* or automatically" into the computer system (emphasis added)) and 8:63-67 ("Keyboard 16 may be any modern keyboard which . . . comprises a means for the system user to selectively input information . . . where *manual* input is called for." (emphasis added)).[7]  The '938 Patent implies that even "semi-automatically" falls short of "automatically."  Ex. B at 16:24-33[8].

Further, even if some human intervention is permitted when an activity is performed "automatically," the '938 Patent confirms that the automated activity itself *cannot* be performed by a user.  For example, the '938 Patent lists an optical scanner as an example of a device that can be used for automatically inputting information.  *See* Ex. B at 16:5-30.  But even when using a scanner to automatically input information, user intervention would be limited to feeding pages into the optical scanner.  The automated activity—inputting—would still be performed *by the scanner*—not by the user.  Similarly, the '938 Patent's statement that an "automatic reply

---

[6] Plaintiff's proposed construction:  "Performed using a computer running one or more software modules."
[7] *See also* Ex. A at 8:9-20 and FIG. 4.
[8] *See also* Ex. A at 8:27-32.

*mechanism*" must be "flexible, and able to respond to a wide range of client inquiries in an ongoing **'conversational'** manner" would be nonsensical if such a "mechanism" could be a user. Ex. B at 2:48-52 (emphasis added). "Automatically" thus requires generation *by* a device. Any other conclusion would disregard the basic nature of a system that "automatically" performs a task, and would ignore the patentee's own use of the term "automatically" in the specification.

### 2. But "reply" is unambiguously defined as being "generated by a user"

The '938 Patent includes an explicit glossary definition of "reply:"

> "Reply" as used herein means a responsive communication *generated by a user* of the system of the invention that responds to a 'response' from a client.

Ex. B at 8:4-6 (emphasis added).  As with the multiple definitions in *Genentech*, it is irrelevant whether this inconsistency was a conscious effort to create ambiguity in the claims or to expand their scope (*e.g.*, to include automatically *sending* user-generated replies), or whether it was simply a mistake.  29 F.3d at 1564 ("These diverse definitions reflect either inartful drafting, a conscious attempt to create ambiguity about the scope of the claims, or a desire to claim a wide variety of materials not described or enabled in the specification.").  Regardless, Plaintiffs may not now evade their own definition's limits on the claimed "replies" simply because it makes their claims nonsensical.  *CCS Fitness*, 288 F.3d at 1366; *Martek Biosciences*, 579 F.3d at 1380.

### 3. Replies cannot be "automatically" generated and "generated by a user"

Replies cannot be both "automatically" generated and "generated by a user."  The claims' requirement that replies be "automatically" generated precludes them from being generated by a user.  The nature of the term "automatically," as confirmed by its use in the '938 Patent's specification is that an automated activity is performed *by* a device—instead of *by* a user (e.g., *with* or *using* a device).  But the definitional requirement that replies be "generated *by* a user" precludes their being "automatically" generated, and thereby renders the claims indefinite.

      **c.**      **Claim 113 of the '366 Patent is Indefinite Because it Combines Two Statutory Classes of Invention—a System and a Method of Using the System**

Claim 113 of the '366 patent falls squarely into *IPXL's* prohibition on hybrid claims because it recites <u>both</u> a system with structural components and performance of method steps requiring use of the system.  430 F.3d at 1384 ("Because claim 25 recites both a system and the method of using the system, it does not apprise a person of ordinary skill in the art of its scope, and it is invalid under section 112, paragraph 2.").  Specifically, claim 113 recites a "system for preparing personalized communication documents" that requires "a computing system" and "electronic databases coupled to the computing system," yet it also requires a method of using the system to automatically prepare and generate successive personalized communication documents with "one or more software routines *executing* on the computer system" that automatically prepare and successively generate the documents.  By requiring that the software routines are actually "executing" on the computing system, claim 133 recites performance of the method of preparing and generating the successive personalized communication documents.

In *IPXL*, claim 25 read: "The *system of claim 2* [ including an input means] wherein the predicted transaction information comprises both a transaction type and transaction parameters associated with that transaction type, and the *user uses the input means* to either change the predicted transaction information or accept the displayed transaction type and transaction parameters." *Id.* at 1384.  Here, "software routines *executing*" the method steps creates the same insoluble ambiguity.  As in *IPXL*, it is unclear whether infringement of claim 113 occurs when one creates the system (e.g., by assembling a computing system coupled to databases with the claimed software) or whether infringement occurs when a user of the system has it perform the claimed method steps by *executing* software that automatically prepares and generates successive

personalized communication documents.   430 F.3d at 1384.   Accordingly, because claim 113 recites two different statutory classes of invention—both a system and a method—it is indefinite.

## VII.   CONCLUSION AND REQUEST FOR RELIEF

The '434 Patent fails to provide an objective anchor for the purely subjective standard of "appropriate[ness]" that appears in every independent claim of the '434 Patent.   Every claim of the '434 Patent is rendered insolubly ambiguous.   Defendants therefore ask the Court to grant summary judgment that all claims of the '434 Patent are invalid under Section 112, ¶ 2.

All claims of the '938 Patent are logically inconsistent.   Even allowing for possible variations in the Court's forthcoming construction of "automatically," a reply generated by a user is *manually* generated rather than automatically generated.   The requirement that replies be both automatically generated and generated by a user is, thus, insolubly ambiguous and renders indefinite the phrase "automatically generating . . . replies" that appears in every claim of the '938 Patent  Defendants therefore ask the Court to grant summary judgment that all claims of the '938 Patent are invalid under Section 112, ¶ 2.

Claim 113 of the '366 Patent requires both an apparatus—"a system"—and a method— "executing."   As a result, it is impossible to determine the scope of claim 113.   Defendants therefore ask the Court to grant summary judgment that claim 113 of the '366 Patent is invalid under Section 112, ¶ 2.

Dated:  March 7, 2013

Respectfully,

*/s/ David D. Bahler*
David D. Bahler – Lead Attorney
Texas State Bar No. 01513100
Eagle H. Robinson
Texas State Bar No. 24065984
Fulbright & Jaworski L.L.P.
98 San Jacinto Boulevard, Suite 1100
Austin, TX 78701
Tel.: (512) 536-3005
Fax: (512) 536-4598
dbahler@fulbright.com
erobinson@fulbright.com

**COUNSEL FOR FARMERS GROUP, INC.,
FARMERS INSURANCE COMPANY, INC.,
FARMERS NEW WORLD LIFE INSURANCE
COMPANY, 21ST CENTURY INSURANCE
AND FINANCIAL SERVICES, INC., 21ST
CENTURY INSURANCE COMPANY, 21ST
CENTURY INSURANCE COMPANY OF THE
SOUTHWEST, 21ST CENTURY NATIONAL
INSURANCE COMPANY, AND 21ST
CENTURY NORTH AMERICA INSURANCE
COMPANY**

*/s/ Clayton C. James*
Clayton C. James
Srecko Vidmar
C. Matthew Rozier
HOGAN LOVELLS LLP
One Tabor Center, Suite 1500
1200 Seventeenth Street
Denver, Colorado 80202
(303) 899-7300 (phone)
(303) 899-7333 (fax)
clay.james@hoganlovells.com
lucky.vidmar@hoganlovells.com
matt.rozier@hoganlovells.com

**ATTORNEYS FOR DEFENDANTS
UNITEDHEALTH GROUP INC.;
UNITEDHEALTHCARE INSURANCE**

**COMPANY; GOLDEN
RULE INSURANCE COMPANY; UNITED
HEALTHCARE SERVICES INC.; AND
PACIFICARE HEALTH SYSTEMS LLC**


*/s/ Fred I. Williams*
Fred I. Williams (*Lead Attorney*)
State Bar No. 00794855
fwilliams@akingump.com
AKIN GUMP STRAUSS HAUER & FELD LLP
300 West 6th Street, Suite 1900
Austin, Texas  78701
Telephone: 512.499.6200
Facsimile:  512.499.6290

Todd E. Landis
State Bar No. 24030226
tlandis@akingump.com
Eric J. Klein
State Bar No. 24041258
eklein@akingump.com
Kellie M. Johnson
State Bar No. 24070003
kmjohnson@akingump.com
AKIN GUMP STRAUSS HAUER & FELD LLP
1700 Pacific Avenue, Suite 4100
Dallas, Texas  75201
Telephone: 214.969.2800
Facsimile: 214.969.4343

**ATTORNEYS FOR DEFENDANTS
METROPOLITAN LIFE INSURANCE
COMPANY, METLIFE BANK, N.A., AND
METROPOLITAN PROPERTY AND
CASUALTY INSURANCE COMPANY**

*/s/ Thatcher A. Rahmeier*
Francis DiGiovanni
Thatcher Rahmeier
Novak Druce Connolly Bove + Quigg LLP
1000 North Orange Street
P.O. Box 2207
Phone:  (302) 658-9141
frank.digiovanni@novakdruce.com
thatcher.rahmeier@novakdruce.com

Melissa Richards Smith
Gilliam & Smith, L.L.P.
303 South Washington Avenue
Marshall, Texas 75670
Phone: (903) 934-8450
melissa@gilliamsmithlaw.com

**COUNSEL FOR DEFENDANTS ING BANK
FSB, SHAREBUILDER CORP. AND ING
DIRECT INVESTING, INC.**


*/s/ Jonathan Giroux*
Allan J. Sternstein
Illinois State Bar Number 2728966
Jonathan Giroux
Illinois State Bar Number 6306024
Dykema Gossett PLLC
10 South Wacker Drive, Suite 2300
Chicago, Illinois 60606
(312) 876-1700 Telephone
(312) 876-1155 Facsimile
asternstein@dykema.com
jgiroux@dykema.com

William D. Cramer
Texas State Bar Number 00790527
Dykema Gossett PLLC
1717 Main Street, Suite 4000
Dallas, Texas 75201
214-462-6400 Telephone
214-462-6401 Facsimile
wcramer@dykema.com

**ATTORNEYS FOR DEFENDANTS FIFTH
THIRD BANCORP AND FIFTH THIRD BANK**
*/s/ Eric H. Findlay*
Eric H. Findlay
State Bar No. 00789886
Findlay Craft, LLP.
6760 Old Jacksonville Highway, Suite 101
Tyler, Texas  75703
Tel. (903) 534-1100
Fax (903) 534-1137
efindlay@findlaycraft.com

Michael A. Morin
Andrew J. Vance
Finnegan, Henderson, Farabow,
Garrett & Dunner LLP
901 New York Ave NW
Washington DC 20001
(202) 408-4000
Fax (202) 408-4400
michael.morin@finnegan.com
andrew.vance@finnegan.com

**ATTORNEYS FOR DEFENDANTS
AMERIPRISE FINANCIAL, INC.,
AMERIPRISE FINANCIAL SERVICES, INC.,
AMERIPRISE BANK, FSB, AMERIPRISE
INSURANCE COMPANY, IDS PROPERTY
CASUALTY INSURANCE COMPANY, AND
AMERIPRISE AUTO & HOME INSURANCE
AGENCY, INC.**

*/s/ Brian D. Roche*
Brian D. Roche
David Pollock
Raven Moore
John W. McCauley IV
REED SMITH LLP
10 South Wacker Drive
40th Floor
Chicago, IL 60606-7507
Telephone: 312.207.1000
Fax: 312.207.6400
broche@reedsmith.com
dpollock@reedsmith.com
rmoore@reedsmith.com
jmccauley@reedsmith.com

T. John Ward, Jr.
State Bar No. 00794818
Email: jw@wsfirm.com
Wesley Hill
State Bar No. 24032294
E-mail: wh@wsfirm.com
Ward & Smith Law Firm
111 W. Tyler St.

Longview, Texas  75601
Telephone: (903)757-6400
Fax: (903)757-2323

**ATTORNEYS FOR DEFENDANTS GE
CAPITAL FINANCIAL, INC., GE
CONSUMER FINANCE, INC., GE MONEY
BANK F.S.B., GENERAL ELECTRIC
CAPITAL CORPORATION, GENERAL
ELECTRIC COMPANY AND GENERAL
ELECTRIC CAPITAL SERVICES, INC.**


*/s/ Jonathon R. Spivey*
Jonathan R. Spivey
LaTasha M. Snipes
BRACEWELL & GIULIANI LLP
711 Louisiana St., Suite 2300
Houston, Texas 77002
(713) 223-2300 – Telephone
(713) 221-1212 – Fax

**ATTORNEYS FOR DEFENDANT TCF
NATIONAL BANK**


/s/Neil J. McNabnay
Thomas M. Melsheimer
melsheimer@fr.com
Texas Bar No. 13922550
Neil J. McNabnay
njm@fr.com
Texas Bar No. 24002583
Chad B. Walker
cbwalker@fr.com
Texas Bar No. 24056484
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX 75201
Telephone: (214) 747-5070
Facsimile:  (214) 747-2091

**ATTORNEYS FOR  COMERICA BANK;
COMERICA INC.; AND COMERICA
INSURANCE SERVICES, INC., CUNA
MUTUAL INSURANCE AGENCY, INC.;**

**CUNA MUTUAL INSURANCE SOCIETY (N/K/ A CMFG LIFE INSURANCE COMP ANY); AND MEMBERS LIFE INSURANCE CO., CNO FINANCIAL GROUP, INC. AND COLONIAL PENN LIFE INSURANCE COMPANY, NATIONWIDE MUTUAL INSURANCE COMP ANY, NATIONWIDE INVESTMENT SERVICES CORPORATION, NATIONWIDE PROPERTY AND CASUALTY INSURANCE COMPANY, NATIONWIDE LLOYDS COMPANY AND ALLIED PROPERTY AND CASUALTY INSURANCE COMPANY**

/s/  *Brian E. Ferguson*
Melissa R. Smith
Texas State Bar No. 24001351
GILLAM & SMITH, L.L.P.
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
melissa@gillamsmithlaw.com

Harry L. "Gil" Gillam, Jr.
Texas State Bar No. 07921800
GILLAM & SMITH, L.L.P.
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
gil@gillamsmithlaw.com

*Of Counsel*:
Brian E. Ferguson
NY State Bar No. 2464972
WEIL, GOTSHAL & MANGES LLP
1300 Eye Street NW, Suite 900
Washington, DC 20005
Telephone: (202) 682-7000
Facsimile: (202) 857-0940
brian.ferguson@weil.com

Jill J. Schmidt
CA State Bar No. 236349
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100
jill.schmidt@weil.com

**ATTORNEYS FOR AIG FEDERAL SAVINGS
BANK, AMERICAN GENERAL LIFE AND
ACCIDENT INSURANCE COMPANY,
NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA, UNITED
STATES LIFE INSURANCE COMPANY IN
THE CITY OF NEW YORK, AND
SPRINGLEAF FINANCE, INC.**


*/s/ Gregory P. Love*
Gregory P. Love
Stevens Love
P.O. Box 3427
Longview, TX  75606

John P. Passarelli (admitted pro hac vice)
James M. Sulentic (admitted pro hac vice)
Jason S. Jackson
Kutak Rock LLP
The Omaha Building
1650 Farnam Street
Omaha, NE  68102-2186

**ATTORNEYS FOR DEFENDANTS
FIRST NATIONAL BANK OF OMAHA,
FIRST NATIONAL OF NEBRASKA, INC.
AND FIRST NATIONAL CREDIT CARD
CENTER, INC.**


*/s/ David M. Alban*
Deron Dacus
Texas Bar No. 00790553
The Dacus Firm, P.C.

821 ESE Loop 323, Suite 430
Tyler, TX  75701
Telephone:  (903) 705-1117
Facsimile:  (903) 581-2543
ddacus@dacusfirm.com

Jason Cook
Texas. Bar No. 24028537
**ALSTON & BIRD, LLP**
2200 Ross Avenue, Suite 3601
Dallas, Texas 75201
Telephone:  214-922-3407
Facsimile:  214-922-3899
jason.cook@alston.com

Michael S. Connor (admitted *pro hac vice*)
N.C. Bar No. 16152
Richard M. McDermott (admitted *pro hac vice*)
N.C. Bar No. 21201
David M. Alban (admitted in district)
N.C. Bar No. 40299
**ALSTON & BIRD, LLP**
101 South Tryon Street, Suite 4000
Charlotte, North Carolina 28280
Telephone:  (704) 444-1000
Facsimile:  (704) 444-1111
mike.connor@alston.com
rick.mcdermott@alston.com
david.alban@alston.com

**ATTORNEYS FOR BB&T CORPORATION,
BRANCH BANKING AND TRUST
COMPANY, BB&T FINANCIAL FSB, AND
BB&T INSURANCE SERVICES, INC.**

/s/Matthew P. Harper
Mark C. Nelson
Texas Bar No. 00794361
mark.nelson@snrdenton.com
Matthew P. Harper
SBN: 24037777
matthew.harper@snrdenton.com
SNR Denton US, LLP
2000 McKinney Avenue, Suite 1900
Dallas, Texas   75201-1858

Telephone:  (214) 259-0900
Facsimile:   (214) 259-0910

Eric L. Sophir
SNR DENTON US LLP
1301 K Street, N.W.
Suite 600, East Tower
Washington, DC 20005-3364
Eric.sophir@snrdenton.com
Tel.:  (202) 408-6400
Fax:  (202) 408-6399

Michael E. Jones
SBN: 10929400
POTTER MINTON, PC
110 North College, Suite 500
Tyler, Texas 75702
Tel: 903-597-8311
Fax: 903-593-0846
mikejones@potterminton.com

**ATTORNEY FOR DEFENDANTS
AMERICAN EXPRESS CENTURION BANK,
AMEX ASSURANCE COMPANY, AMERICAN
EXPRESS BANK, FSB, AND AMERICAN
EXPRESS TRAVEL RELATED SERVICES
COMPANY, INC. (cv211)**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have

consented to electronic service are being served with a copy of this document via the Court's

CM/ECF system per Local Rule CV-5(a)(3) on March 7, 2013.

<u>/s/ *David D. Bahler*</u>
David D. Bahler